UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KULWINDER SINGH and BIKRAMJIT SINGH, on their
own behalf and on behalf of others similarly situated,

Plaintiffs,

- *against* -

MEADOW HILL MOBILE INC. d/b/a Meadow Hill Mobil
Mart, ABUJABER HAZIM, and AHMED GHADEER,

Defendants.

20 Civ. 3853 (CS) (AEK)

<u>REPORT AND
RECOMMENDATION</u>

---

**TO:   THE HONORABLE CATHY SEIBEL, UNITED STATES DISTRICT JUDGE**

This action was commenced on May 19, 2020, by Plaintiffs Kulwinder Singh

("Kulwinder") and Bikramjit Singh ("Bikramjit") (collectively, "Plaintiffs").  ECF No. 1

("Complaint").[1]  The Complaint asserts one claim under the Fair Labor Standards Act ("FLSA")

and seven claims under the New York Labor Law ("NYLL"), seeking unpaid minimum wages,

unpaid overtime compensation, unpaid spread-of-hours premiums, liquidated damages, wage

notice and wage statement violation damages, prejudgment and post-judgment interest, and

attorneys' fees and costs against Defendants Meadow Hill Mobile Inc. d/b/a Meadow Hill

---

[1] The Complaint includes collective action and class action allegations, <u>see</u> Compl. ¶ 57
& Counts II, IV-VIII, but counsel neither sought certification of this matter as a collective action,
nor provided evidence in support of damages claims for anyone other than the named plaintiffs.
Thus, the Court deems any collective or class action claims to have been waived.  <u>See</u> <u>Bautista v.
ABC Corp.</u>, No. 19-cv-3963 (LTS) (RWL), 2021 WL 1225872, at *1 n.1 (S.D.N.Y. Apr. 1,
2021) ("The Complaint asserted claims both individually and on behalf of an FLSA Collective.
However, Plaintiff has asserted only individual claims in his motion for default judgment. . . .
Furthermore, no class has been certified in this action and no joinders have been filed.  The
request for collective action is therefore waived because Plaintiff failed to reiterate his request in
the motion for default judgment.").  Accordingly, this report and recommendation applies only to
Plaintiffs Kulwinder Singh and Bikramjit Singh.

Mobile Mart ("Meadow Hill"), Abujaber Hazim ("Hazim"), and Ahmed Ghadeer ("Ghadeer") (collectively, "Defendants").  Id.

On October 10, 2020, the Clerk of the Court issued certificates of default against each of the Defendants.  ECF Nos. 17-19.  The issue of the amount of damages and any other monetary relief (including attorneys' fees and costs) to which Plaintiffs may be entitled was referred to the undersigned for an inquest.  See ECF No. 33.[2]  On December 9, 2020, the Court ordered Plaintiffs to file Proposed Findings of Fact and Conclusions of Law concerning all damages and any other monetary relief being sought in connection with the entry of a default judgment against Defendants.  ECF No. 34.  On January 13, 2021, Plaintiffs filed papers in support of their requested damages and attorneys' fees and costs.  ECF No. 37 (Proposed Findings of Fact and Conclusions of Law ("Proposed Findings")); ECF No. 38 (Declaration of John Troy ("Troy Decl.")); ECF No. 38-1 (Affidavit of Accounting); ECF No. 38-2 (Damages Calculations ("Calculations")); ECF No. 38-3 (Affidavit of Kulwinder Singh ("Kulwinder Aff.")); ECF No. 38-4 (Affidavit of Bikramjit Singh ("Bikramjit Aff.")); ECF No. 40 (Declaration of John Troy in

---

[2] Plaintiffs first submitted papers in support of the amount of damages and attorneys' fees they are seeking on October 29, 2020.  ECF Nos. 21-22, 24-26.  Shortly thereafter, the Court issued an Order explaining that

> before any judgment is entered, [the Court] will need more information and counsel will have to make some adjustments.  For example, the damages calculation for K Singh includes $55,426.50 for the period 5/19/17 to 12/30/17 but the correct number appears to be $6393.42.  Plaintiffs are claiming liquidated damages under both the FLSA and the NYLL but double liquidated damages are not permitted.  The hourly rates counsel is charging seem too high, and non-lawyer work is being charged at a lawyer rate.  This is all by way of example.  If counsel wants to avoid an inquest he will have to provide more and better detail.

ECF No. 27.  Following the issuance of an order to show cause on November 2, 2020, ECF No. 28, and the conduct of a show cause hearing on December 4, 2020, the case was referred.

Support of Motion for Attorney Fees and Costs ("Troy Attorneys' Fees Decl.")); ECF No. 41 (Memorandum of Law in Support of Motion for Attorneys' Fees and Costs ("Attorneys' Fees Memo")).  These filings, as well as the Court's December 9, 2020 Order, were served on Defendants on January 13, 2021, see ECF No. 42, but to date, Defendants have neither contacted the Court nor filed a response.

For the reasons set forth below, I respectfully recommend that a default judgment be entered against Defendants as follows: (1) $147,098.06 to Kulwinder Singh for compensatory, liquidated, and statutory damages; (2) $65,390.64 to Bikramjit Singh for compensatory, liquidated, and statutory damages; (3) prejudgment interest at the rate of 9 percent per annum, from April 1, 2018 until the date of entry of judgment for Kulwinder Singh, and from June 20, 2019 until the date of entry of judgment for Bikramjit Singh; (4) post-judgment interest calculated in accordance with 28 U.S.C. § 1961; (5) $11,649.25 in attorneys' fees; and (6) $854 in costs.[3]

## BACKGROUND

The following facts adduced from the Complaint are accepted as true for purposes of this inquest.[4]

Kulwinder was employed by Defendants to work as a gas station minimart attendant at Meadow Hill from May 1, 2016 to March 2, 2020.  Compl. ¶ 7.  Bikramjit was employed by Defendants to work as a gas station minimart attendant at Meadow Hill from October 1, 2018 to

---

[3] This report and recommendation addresses both the inquest on damages that was the subject of the December 4, 2020 order of reference, as well as the pending motions for attorneys' fees and costs at ECF Nos. 24 and 39.

[4] The proposed findings of fact set forth in the Proposed Findings are largely consistent with the allegations in the Complaint.

March 9, 2020.  Id. ¶ 8.  Meadow Hill is a domestic business corporation organized under the laws of the State of Connecticut[5] with its principal address at 1423 NY-300, Newburgh, New York.  Id. ¶ 9.  Hazim is the owner of Meadow Hill, and Ghadeer is a partner in Meadow Hill. Id. ¶¶ 13, 17.[6]  Both Hazim and Ghadeer had the power to hire and fire employees; supervised and controlled employee work schedules; determined the rate and method of payment to employees; and maintained employee records.  Id.

During his period of employment by Defendants, Kulwinder's work schedule ran from 7 a.m. to 7 p.m. without any break from Monday through Sunday, totaling 84 hours per week.  Id. ¶ 30.  Between May 1, 2016 and December 30, 2016, Kulwinder was paid a flat rate of $8.50 per hour.  Id. ¶ 34.  From December 31, 2016 to December 30, 2017, Kulwinder was paid a flat rate of $9.00 per hour.  Id. ¶ 35.  From December 31, 2017 to December 30, 2018, Kulwinder was paid a flat rate of $10.00 per hour.  Id. ¶ 36.  From December 31, 2018 to December 30, 2019, Kulwinder was paid a flat rate of $10.50 per hour.  Id. ¶ 37.  From December 31, 2019 to March 2, 2020, Kulwinder was paid a flat rate of $11.20 per hour.  Id. ¶ 38.

From October 1, 2018 to March 9, 2020, Bikramjit was employed by Defendants to work as a cashier at Meadow Hill.  Id. ¶ 44.  Bikramjit's work schedule ran from 5 p.m. to 5 a.m. without any break from Monday through Sunday, totaling 84 hours per  week.  Id. ¶ 45.  From

---

[5] Paragraph 9 of the Complaint alleges that Meadow Hill is organized under the laws of the State of Connecticut, but paragraph 12 of the Proposed Findings states that Meadow Hill is organized under the laws of the State of New York.

[6] Paragraph 13 of the Proposed Findings states that "Owner/Operator Defendant ABUJABER HAZIM is the owner and chief executive officer of Defendants' minimart gas station," while paragraph 14 of the Proposed Findings states that "Owner/Operator Defendant AHMED GHADEER is the Chief Executive Officer" of Meadow Hill.  Plaintiffs' affidavits refer to both Hazim and Ghadeer as the "owner and manager" of the business.  See Kulwinder Aff. ¶¶ 21-22; Bikramjit Aff. ¶¶ 18-19.

October 1, 2018 to December 30, 2018, Bikramjit was paid a flat rate of $10.00 per hour.  Id. ¶

49.  From December 31, 2018 to December 30, 2019, Bikramjit was paid a flat rate of $10.50 per

hour.  Id. ¶ 50.  From December 31, 2019 to March 9, 2020, Bikramjit was paid a flat rate of

$11.20 per hour.  Id. ¶ 51.

     At all relevant times, Plaintiffs did not receive the prevailing minimum wage, overtime

pay at 1.5 times their regular hourly rate of pay for all hours worked in excess of 40 hours per

week, or a spread-of-hours premium for shifts that lasted longer than ten hours, as required by

the FLSA and NYLL.  Id. ¶¶ 34-40, 42-46, 49-53, 55-56, 61.  Further, when they were hired,

Plaintiffs were not given notices including their rates of pay and payday, and on each payday,

Plaintiffs were not given statements that included, among other things, Plaintiffs' rates of pay,

any deductions made from Plaintiffs' wages, any allowances claimed as part of the minimum

wage, or Plaintiffs' gross and net wages.  Id. ¶¶ 25, 41, 54.[7]

## DISCUSSION

### I.   Legal Standard

     Upon the default of a party, a court must accept as true all of the factual allegations of the

complaint except those relating to damages, and a plaintiff is entitled to all reasonable inferences

from the evidence offered; nonetheless, the court has discretion to decide whether the facts set

---

[7] In the Complaint, Plaintiffs also assert claims for violations of the NYLL based on the failure to provide meal periods and the failure to maintain payroll records.  Compl. ¶¶ 79-88. These claims appear to have been abandoned, as they are not included in Plaintiffs' Proposed Findings.  In any event, both claims fail as a matter of law, since there is no private right of action under the legal authorities invoked by Plaintiffs for the failure to provide meal periods, see N.Y. Lab. L. § 162 & Compl. ¶¶ 80, 83, or for the failure to maintain payroll records, see N.Y. Comp. Codes R. & Regs. §§ 142-2.6 (miscellaneous industries and occupations), 146-2.1 (hospitality industry) & Compl. ¶ 85 .  See Xin Long Lin v. New Fresca Tortillas, Inc., No. 18-cv-3246 (RJD) (RER), 2019 WL 3716199, at *5-6 (E.D.N.Y. May 1, 2019), adopted by 2019 WL 3714600 (E.D.N.Y. May 28, 2019).

forth in the complaint state a valid claim.  See, e.g., Au Bon Pain Corp v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  "When assessing the propriety of a damages award after a judgment by default is entered, a court must be satisfied initially that the allegations of the complaint are well-pleaded."  Nwagboli v. Teamwork Transp. Corp., No. 08-cv-4562 (JGK) (KNF), 2009 WL 4797777, at *2 (S.D.N.Y. Dec. 7, 2009) (quoting Levesque v. Kelly Commc'ns, Inc., No. 91-cv-7045 (CSH), 1993 WL 22113, at *5 (S.D.N.Y. Jan. 25, 1993)).

"If the allegations are well-pleaded, or, in other words, establish liability for a claim, 'the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible [to] mathematical computation.'"  Id. (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).  The plaintiff must prove damages with "reasonable certainty."  See, e.g., Trinity Biotech, Inc. v. Reidy, 665 F. Supp. 2d 377, 380 (S.D.N.Y. 2009) (citing cases).  As a limit on a plaintiff's award, Rule 54(c) of the Federal Rules of Civil Procedure requires that "a default judgment must not differ in kind from, or exceed in amount, that which is demanded in the pleadings."  GAKM Res. LLC. v. Jaylyn Sales Inc., No. 08-cv-6030 (GEL), 2009 WL 2150891, at *2 (S.D.N.Y. July 20, 2009) (quotation marks and alteration omitted).  In determining the amount of damages to be awarded, under Rule 55(b)(2) of the Federal Rules of Civil Procedure, "it is not necessary for the District Court to hold a hearing, as long as it [has] ensured that there [is] a basis for the damages specified in the default judgment."  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quotation marks and alteration omitted).

II.    **Analysis**

   A.  **Liability under the FLSA and the NYLL**

   The allegations in the Complaint establish Defendants' liability under the FLSA for

failure to pay Plaintiffs their statutorily required overtime compensation, and under the NYLL

for failure to (1) pay Plaintiffs their minimum wages, overtime compensation, and spread-of-

hours premiums, and (2) provide Plaintiffs with the statutorily required notice at the time of

hiring and wage statements on each payday.

   With respect to all of the claims, a plaintiff's burden of proof under both federal and state

law as to wages and hours worked may be met by reliance on recollection alone; it is up to the

employer to provide evidence in order to "'negative the reasonableness of the inference to be

drawn from the employee's evidence.'" Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327,

332, 334 (S.D.N.Y. 2005) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688

(1946).  "If the employer fails to do so, the court may enter judgment in the employee's favor,

using [his or] her recollection to determine damages, even though the result be only

approximate." Angamarca v. Pita Grill 7 Inc., No. 11-cv-7777 (JGK) (JLC), 2012 WL 3578781,

at *4 (S.D.N.Y. Aug. 2, 2012) (quotation marks omitted).

   1.  **Violation of the FLSA and the NYLL for Unpaid Overtime
       Compensation**

   "To establish a claim under the FLSA for . . . overtime compensation, a plaintiff must

show that he or she is an 'employee' of the defendant within the meaning of the FLSA and that

the defendant is an 'enterprise engaged in commerce.'" Fermin v. Las Delicias Peruanas Rest.,

Inc., 93 F. Supp. 3d 19, 31-32 (E.D.N.Y. 2015) (citations omitted).  Here, as gas station minimart

attendants, Plaintiffs were both covered, non-exempt employees under the FLSA.  See 29 U.S.C.

§ 203(e) ("the term 'employee' means any individual employed by an employer"); Vargas v. Jet

Peru-Courier Corp., No. 15-cv-6859 (RRM) (PK), 2018 WL 1545699, at *6 (E.D.N.Y. Mar. 14, 2018) ("The FLSA contains a litany of exemptions, but they do not include functions such as 'cashier/customer service attendant.'") (quotation marks and citations omitted), adopted by 2018 WL 1545679 (E.D.N.Y. Mar. 28, 2018).

Moreover, each of the Defendants qualifies as an "employer" under the FLSA.  Under the statute, an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).

In order for a corporate party to be liable for overtime compensation under 29 U.S.C. § 207(a), such party must be an enterprise engaged in commerce.  The FLSA defines an "enterprise engaged in commerce" as an enterprise that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done [of] not less than $500,000 . . . ."  29 U.S.C. § 203(s)(1)(A)(i)-(ii).[8]  Plaintiffs allege that Meadow Hill "is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year."  Compl. ¶ 10.  In addition, Plaintiffs allege that Meadow Hill "purchased and handled goods moved in interstate commerce."  Id. ¶ 11.  "Ordinarily, allegations detailing statutory definitions without providing additional facts may not be sufficient to infer a nexus to interstate commerce.  In the context of default, however, the Court may accept these uncontested allegations as true and make reasonable inferences."  See Vargas, 2018 WL 1545699, at *5.  In this case, it is reasonable to infer that a gas station minimart has employees

---

[8] In contrast, the NYLL "does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  Fermin, 93 F. Supp. 3d at 34 (quotation marks omitted); see also Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp., No. 13-cv-3061 (JGK), 2014 WL 2624759, at *2 (S.D.N.Y. June 10, 2014).

handling or selling goods that have been moved or produced in interstate commerce.  Therefore, corporate defendant Meadow Hill is a covered employer under the FLSA.

With respect to individual defendants Hazim and Ghadeer, whether they qualify as employers under the FLSA depends on whether they "possessed the power to control the workers in question." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999); see Guallpa v. N.Y. Pro Signs Inc., No. 11-cv-3133 (LGS) (FM), 2014 WL 2200393, at *3 (S.D.N.Y. May 27, 2014) ("[T]he overwhelming weight of authority is that a corporate officer with operational control is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.") (quotation marks and alteration omitted), adopted by 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014).  Courts deciding this issue apply an "economic reality" test, in which the relevant factors to be considered include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Herman, 172 F.3d at 139.  "No one of the four factors standing alone is dispositive.  Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." Id. (quotation marks omitted).

Plaintiffs allege that Hazim is the owner of Meadow Hill and "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at . . . Meadow Hill Mobil Mart." Compl. ¶ 13.  In addition, Plaintiffs allege that Hazim actually hired and fired Plaintiffs. Id. ¶¶ 14-15.  Plaintiffs further allege that Ghadeer is a partner in Meadow Hill and "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employee records at . . . Meadow Hill Mobil Mart." Id. ¶ 17.  Plaintiffs also allege that Ghadeer used to give instructions to Plaintiffs on how to do their work. Id. ¶ 18.  In the context of a default, these allegations are sufficient to establish that Hazim and Ghadeer qualify as employers under the FLSA.  Accordingly, Hazim and Ghadeer are jointly and severally liable with Meadow Hill as Plaintiffs' employers. Guallpa, 2014 WL 2200393, at *3

"The NYLL defines 'employer' and 'employee' in the same broad manner as the FLSA." Campos v. Lemay, No. 05-cv-2089 (LTS), 2007 WL 1344344, at *4 (S.D.N.Y. May 7, 2007); see Velarde v. GW GJ, Inc., 914 F.3d 779, 783 (2d Cir. 2019) ("We have observed elsewhere that FLSA and NYLL define 'employee' in nearly identical terms.  Accordingly, we construe the NYLL definition as the same in substance as the definition in the FLSA.") (quotation marks and citation omitted); see Romero v. Real Innovative Constr., LLC, No. 18-cv-7424 (VEC) (RWL), 2020 WL 534172, at *3 n.2 (S.D.N.Y. Jan. 13, 2020) ("[T]he analysis of whether a person or entity constitutes an 'employer' is the same under the FLSA and NYLL.") (citing cases), adopted by 2020 WL 528888 (S.D.N.Y. Feb. 3, 2020).  Therefore, Plaintiffs qualify as covered employees and Defendants qualify as covered employers under the NYLL as well.

Plaintiffs allege that throughout their employment, they worked 84 hours per week but were never paid overtime compensation.  Both the FLSA and the NYLL require employers to pay non-exempt employees who work in excess of 40 hours per workweek at least 150 percent of their regular rate of pay for those excess hours.  See 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.  Because Defendants have defaulted, Plaintiffs' factual representations as to the number of hours they worked and the wages they received are accepted

as true.  Therefore, Plaintiffs have succeeded in stating claims for violations of the FLSA and NYLL based on Defendants' failure to pay overtime compensation.

### 2.  Other Violations of the NYLL

The remainder of Plaintiffs' claims are brought solely for violations of the NYLL. Plaintiffs allege that throughout their employment, Defendants knowingly and willfully failed to pay Plaintiffs their minimum wages in the lawful amounts for all hours worked.  See Compl. ¶¶ 59-62.  The NYLL requires that employees be paid at least the minimum wage rate for each hour worked.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1.[9]  Further, Plaintiffs allege that throughout their employment, Defendants failed to pay an extra hour's pay for each day that Plaintiffs worked an interval in excess of ten hours per day.  See Compl. ¶¶ 26, 43, 56, 77-78. The NYLL requires that on each day on which the spread of hours worked exceeds ten hours, an employee shall receive one additional hour of pay at the basic minimum hourly rate.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.

Finally, Plaintiffs allege that when they were hired, Defendants failed to provide notice in English and Hindi (Plaintiffs' primary language) containing Plaintiffs' rate of pay, allowances, name of the employer, address of the employer's main office, and the telephone number of the employer; Plaintiffs also allege that they did not receive the required paystub information with every payment of wages.  Compl. ¶¶ 25, 90-93, 95-97; Kulwinder Aff. ¶ 17; Bikramjit Aff. ¶ 14. The NYLL requires that every employer

---

[9] Plaintiffs cite to various sections of Part 146 of the New York Compilation of Codes, Rules, and Regulations in both their Complaint and their Proposed Findings, but Part 146 regulations apply to employees in the Hospitality Industry, which is defined to include "any restaurant or hotel."  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.1.  A gas station minimart is not a restaurant or hotel.  Thus, the Court cites herein to the appropriate applicable regulations from Part 142, which applies to workers in Miscellaneous Industries and Occupations.

> provide his or her employees, in writing in English and in the language
> identified by each employee as the primary language of such employee, at
> the time of hiring, a notice containing the following information: the rate
> or rates of pay and basis thereof, whether paid by the hour, shift, day,
> week, salary, piece, commission, or other; allowances, if any, claimed as
> part of the minimum wage, including tip, meal, or lodging allowances; . . .
> the regular pay day designated by the employer . . .; the name of the
> employer; any "doing business as" names used by the employer; the
> physical address of the employer's main office or principal place of
> business, and a mailing address if different; [and] the telephone number of
> the employer . . . .

N.Y. Lab. Law § 195(1)(a).  The NYLL further requires that an employer must

> furnish each employee with a statement with every payment of wages,
> listing the following: the dates of work covered by that payment of wages;
> name of employee; name of employer; address and phone number of
> employer; rate or rates of pay and basis thereof, whether paid by the hour,
> shift, day, week, salary, piece, commission, or other; gross wages;
> deductions; allowances, if any, claimed as part of the minimum wage; . . .
> and net wages.

N.Y. Lab. Law § 195(3).

Again here, because Defendants have defaulted, Plaintiffs' representations as to the dates and number of hours they worked and the wages they received are accepted as true.  Therefore, Plaintiffs have succeeded in stating claims for violations of the NYLL based on Defendants' failure to pay Plaintiffs minimum wages and spread-of-hours premiums.

Moreover, the Court accepts as true Plaintiffs' representations that Defendants failed to provide them with notices regarding their rates of pay and other information at the time they were hired, and the allegations that Defendants failed to furnish wage statements with every payment of wages in the form required by the NYLL.  Consequently, Plaintiffs also have succeeded in stating claims for violations of the NYLL based on Defendants' violations of these statutory provisions.

### B.  Statute of Limitations

The FLSA ordinarily has a two-year statute of limitations, and the NYLL has a six-year statute of limitations.  See 29 U.S.C. § 255(a); N.Y. Lab. Law §§ 198(3), 663(3).  However, a three-year statute of limitations applies in FLSA cases involving "willful" violations.  29 U.S.C. § 255(a).  In the Complaint, Plaintiffs allege that "Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in [a] pattern and practice of failing to pay . . . Plaintiffs [the] minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek."  Compl. ¶ 2; see also id. ¶¶ 16, 19, 20, 25, 61, 70 (alleging knowing, willful, and intentional conduct).  "Where a default judgment is entered against a defendant under the FLSA, allegations that the violations were willful are deemed admitted."  Castellanos, 2014 WL 2624759, at *3 (quotation marks omitted).  Moreover, "[t]he standard for willfulness under the NYLL does not appreciably differ from that of the FLSA."  Id. (quotation marks omitted).

Therefore, a three-year statute of limitations applies to Plaintiffs' FLSA claim for unpaid overtime compensation.  Since Plaintiffs filed their Complaint on May 19, 2020, Kulwinder is eligible to recover unpaid overtime compensation pursuant to the FLSA for the portion of his employment from May 19, 2017 to March 2, 2020, the date on which his employment ended, see Kulwinder Aff. ¶ 4 ("I worked for [Meadow Hill] from on or about May 1, 2016, to March 2, 2020 . . . ."), and Bikramjit may recover unpaid overtime compensation for the entire period of his employment, since he began work after the May 19, 2017 start of the limitations period, see Bikramjit Aff. ¶ 4 ("I was employed by [Meadow Hill] from on or about October 1, 2018, to March 9, 2020, . . . .").  For Plaintiffs' NYLL claims, the six-year statute of limitations would allow recovery for unpaid overtime compensation dating back to May 19, 2014, which means

that both Kulwinder and Bikramjit are eligible to recover such compensation for the entirety of the period they were employed by Defendants.

Although Plaintiffs allege that Defendants are in violation of both the FLSA and NYLL with respect to overtime compensation, see Compl. ¶¶ 63-75, Plaintiffs cannot recover under both statutes for the same alleged injuries.  "A plaintiff may not recover under both [the FLSA and the NYLL] for the same injury.  He [or she] may, however, elect to recover damages under the statute that provides for the greater recovery."  Guallpa, 2014 WL 2200393, at *4 (citations omitted).  Accordingly, the Court will calculate Plaintiffs' damages for unpaid overtime compensation under the NYLL, which provides for a longer period of damages for Kulwinder based on the six-year statute of limitations.  See id.   The NYLL also allows for greater recovery for both Kulwinder and Bikramjit because "an award of liquidated damages under the FLSA would preclude the [Plaintiffs] from recovering pre-judgment interest," whereas the NYLL "permits the recovery of [both] liquidated damages and pre-judgment interest.  See NYLL § 198(1-a)."  Diaz v. AJE Mgmt. Corp., No. 15-cv-1602 (AT) (JCF), 2017 WL 746439, at *5 n.14 (S.D.N.Y. Jan. 10, 2017), adopted by 2017 WL 748997 (S.D.N.Y. Feb. 23, 2017).  Plaintiffs' other claims are all brought under the NYLL, and the NYLL's six-year statute of limitations applies to each of these claims as well.

### C. Damages Recoverable for Plaintiffs' Claims

#### 1. Unpaid Minimum Wages and Unpaid Overtime Compensation

Plaintiffs seek recovery for unpaid minimum wages and unpaid overtime compensation under the NYLL.  Pursuant to the NYLL, employees must be paid at least the minimum wage rate for each hour worked in a 40-hour workweek.  See N.Y. Lab. Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1.  Additionally, employees must be paid 1.5 times their

regular rate for all overtime hours worked, i.e., for all hours worked in excess of 40 hours.  See N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2.  In support of Plaintiffs' motion for entry of default judgment, Plaintiffs have submitted both affidavits and a proposed damages worksheet. See Kulwinder Aff.; Bikramjit Aff.; Calculations.[10]

### a. Kulwinder Singh[11]

#### i. May 1, 2016 to December 30, 2016

Kulwinder avers that from May 1, 2016 to December 30, 2016, he worked 84 hours per week and was paid a flat rate of $8.50 per hour, or $714 per week.  Kulwinder Aff. ¶¶ 6, 8; Compl. ¶ 34.  The New York State minimum wage rate in effect during this period was $9.00 per hour.  See N.Y. Lab. Law § 652(1).  Had Defendants paid Kulwinder $9.00 per hour during this period, Kulwinder would have earned minimum wages of $360 per week ($9.00 per hour x 40 hours), as opposed to the $340 that he was paid ($8.50 per hour x 40 hours).  Accordingly, Kulwinder is entitled to $20 in unpaid minimum wages for each week worked during this period ($360 - $340).

With respect to overtime wages, had Defendants paid Kulwinder 1.5 times the New York State minimum wage rate for each of his overtime hours worked during this period, he would

---

[10] Because the Court has determined that that the damages worksheet is erroneous in several respects, the Court has disregarded this submission and instead undertaken its own calculations of the damages to which Plaintiffs are entitled.

[11] Confusingly, Plaintiffs state that because Kulwinder's hourly wages were "above the state . . . minimum wage at all relevant times, he is not entitled to any minimum [sic] damages." Proposed Findings ¶ 72.  This may reflect the fact that his rate of pay was always higher than the federal minimum wage, but that is not the relevant point of reference for NYLL claims.  Indeed, Plaintiffs later correctly note, in the context of overtime wages, that "[Kulwinder's] hourly rate, throughout his employment with Defendants, . . . is below the state minimum wage . . . ." Id. ¶ 86.  As explained herein, the Court concludes that throughout his employment with Defendants, Kulwinder was paid less than the New York minimum wage.

have received overtime compensation of $594 per week ($13.50 per hour x 44 hours), as opposed to the $374 that he was paid ($8.50 per hour x 44 hours).  Kulwinder is therefore entitled to $220 in unpaid overtime compensation for each week worked during this period ($594 - $374).

Kulwinder worked a total of 34.86 weeks during this period.[12]  Therefore, for this period, Kulwinder is entitled to $697.20 in unpaid minimum wages ($20 per week x 34.86 weeks) and $7,669.20 in unpaid overtime compensation ($220 per week x 34.86 weeks).

### ii.  December 31, 2016 to December 30, 2017

Kulwinder avers that from December 31, 2016, to December 30, 2017, he worked 84 hours per week and was paid a flat rate of $9.00 per hour, or $756 per week.  Kulwinder Aff. ¶¶ 6, 9; Compl ¶ 35.  The New York State minimum wage rate in effect during this period was $9.70 per hour.  See N.Y. Lab. Law § 652(1)(c).  Had Defendants paid Kulwinder $9.70 per hour during this period, Kulwinder would have earned minimum wages of $388 per week ($9.70 per hour x 40 hours), as opposed to the $360 that he was paid ($9.00 per hour x 40 hours).  Accordingly, Kulwinder is entitled to $28 in unpaid minimum wages for each week worked during this period ($388 - $360).

With respect to overtime wages, had Defendants paid Kulwinder 1.5 times the New York State minimum wage rate for each of his overtime hours worked during this period, he would have received overtime compensation of $640.20 per week ($14.55 per hour x 44 hours), as opposed to the $396 that he was paid ($9.00 per hour x 44 hours).  Kulwinder is therefore

---

[12] To arrive at this figure, the Court used the same calculation used by Plaintiffs in their damages worksheet: adding up the total number of days during the period (May 1 – December 30 = 244 days) and dividing that number by 7.  The number of weeks in each subsequent period was calculated in the same manner.

entitled to $244.20 in unpaid overtime compensation for each week worked during this period ($640.20 - $396).

Kulwinder worked a total of 52.14 weeks during this period.  Therefore, for this period, Kulwinder is entitled to $1,459.92 in unpaid minimum wages ($28 per week  x 52.14 weeks) and $12,732.59 in unpaid overtime compensation ($244.20 per week x 52.14 weeks).

### iii.  December 31, 2017 to December 30, 2018

Kulwinder avers that from December 31, 2017 to December 30, 2018, he worked 84 hours per week and was paid a flat rate of $10 per hour, or $840 per week.  Kulwinder Aff. ¶¶ 6, 10; Compl. ¶ 36.  The New York State minimum wage in effect during this period was $10.40 per hour.  See N.Y. Lab. Law § 652(1)(c).  Had Defendants paid Kulwinder $10.40 per hour during this period, Kulwinder would have earned minimum wages of $416 per week ($10.40 per hour x 40 hours), as opposed to the $400 that he was paid ($10.00 per hour x 40 hours). Accordingly, Kulwinder is entitled to $16 in unpaid minimum wages for each week worked during this period ($416 - $400).

With respect to overtime wages, had Defendants paid Kulwinder 1.5 times the New York State minimum wage rate for each of his overtime hours worked during this period, he would have received overtime compensation of $686.40 per week ($15.60 per hour x 44 hours), as opposed to the $440 that he was paid ($10 per hour x 44 hours).  Kulwinder is therefore entitled to $246.40 in unpaid overtime compensation for each week worked during this period ($686.40 - $440).

Kulwinder worked a total of 52.14 weeks during this period.  Therefore, for this period Kulwinder is entitled to $834.24 in unpaid minimum wages ($16 per week x 52.14 weeks) and $12,847.30 in unpaid overtime compensation ($246.40 per week x 52.14 weeks).

### iv.  December 31, 2018 to December 30, 2019

Kulwinder avers that from December 31, 2018 to December 30, 2019, he worked 84 hours per week and was paid a flat rate of $10.50 per hour, or $882 per week.  Kulwinder Aff. ¶¶ 6, 11; Compl. ¶ 37.  The New York State minimum wage in effect during this period was $11.10 per hour.  See N.Y. Lab. Law § 652(1)(c).  Had Defendants paid Kulwinder $11.10 per hour during this period, Kulwinder would have earned minimum wages of $444 per week ($11.10 per hour x 40 hours), as opposed to the $420 that he was paid ($10.50 per hour x 40 hours).  Accordingly, Kulwinder is entitled to $24 in unpaid minimum wages for each week worked during this period ($444 - $420).

With respect to overtime wages, had Defendants paid Kulwinder 1.5 times the New York State minimum wage rate for each of his overtime hours worked during this period, he would have received overtime compensation of $732.60 per week ($16.65 per hour x 44 hours), as opposed to the $462 that he was paid ($10.50 per hour x 44 hours).  Kulwinder is therefore entitled to $270.60 in unpaid overtime compensation for each week worked during this period ($732.60 - $462).

Kulwinder worked 52.14 weeks during this period.  Therefore, for this period, Kulwinder is entitled to $1,251.36 in unpaid minimum wages ($24 per week x 52.14 weeks) and $14,109.08 in unpaid overtime compensation ($270.60 per week x 52.14 weeks).

### v.  December 31, 2019 to March 2, 2020

Kulwinder avers that from December 31, 2019 to February 28, 2020, he worked 84 hours per week and was paid a flat rate of $11.20 per hour, or $940.80 per week.  Kulwinder Aff. ¶¶ 6, 12; Compl. ¶ 38.  The New York State minimum wage in effect during this period was $11.80 per hour.  See N.Y. Lab. Law § 652(1)(c).  Had Defendants paid Kulwinder $11.80 per hour

during this period, Kulwinder would have earned minimum wages of $472 per week ($11.80 per hour x 40 hours), as opposed to the $448 that he was paid ($11.20 per hour x 40 hours). Accordingly, Kulwinder is entitled to $24 in unpaid minimum wages for each week worked during this period ($472 - $448).

With respect to overtime wages, had Defendants paid Kulwinder 1.5 times the New York State minimum wage for each of his overtime hours worked during this period, he would have received overtime compensation of $778.80 per week ($17.70 per hour x 44 hours), as opposed to the $492.80 that he was paid ($11.20 per hour x 44 hours). Kulwinder is therefore entitled to $286 in unpaid overtime compensation for each week worked during this period ($778.80 - $492.80).

Kulwinder worked 8.57 weeks during this period. Therefore, for this period, Kulwinder is entitled to $205.68 in unpaid minimum wages ($24 per week x 8.57 weeks) and $2,451.02 in unpaid overtime compensation ($286 per week x 8.57 weeks).

For the period of March 1- 2, 2020, Plaintiffs' damages worksheet notes that Kulwinder worked a total of 10 hours. See Calculations. Thus, the only damages he seeks, and to which he would be entitled, for those two days are unpaid minimum wages. Id. Had Defendants paid Kulwinder the New York State minimum wage rate of $11.80 per hour during this period, Kulwinder would have earned minimum wages of $118 over those two days ($11.80 per hour x 10 hours), as opposed to the $112 that he was paid ($11.20 per hour x 10 hours). Accordingly, Kulwinder is entitled to $6.00 in unpaid minimum wages for the 10 hours worked during this period ($118 - $112).

### b.  Bikramjit Singh[13]

#### i.   October 1, 2018 to December 30, 2018

Bikramjit avers that from October 1, 2018 to December 30, 2018, he worked 84 hours per week and was paid a flat rate of $10 per hour, or $840 per week.  Bikramjit Aff. ¶¶ 6-7; Compl. ¶ 49.  The New York State minimum wage in effect during this period was $10.40 per hour.  See N.Y. Lab. Law § 652(1)(c).  Had Defendants paid Bikramjit $10.40 per hour during this period, Bikramjit would have earned minimum wages of $416 ($10.40 per hour x 40 hours), as opposed to the $400 that he was paid ($10 per hour x 40 hours).  Accordingly, Bikramjit is entitled to $16 in unpaid minimum wages for each week worked during this period ($416 - $400).

With respect to overtime wages, had Defendants paid Bikramjit 1.5 times the New York State minimum wage for each of his overtime hours worked during this period, he would have received overtime compensation of $686.40 per week ($15.60 per hour x 44 hours), as opposed to the $440 that he was paid ($10 per hour x 44 hours).  Bikramjit is therefore entitled to $246.40 in unpaid overtime compensation for each week worked during this period ($686.40 - $440).

Bikramjit worked 13 weeks during this period.  Therefore, for this period, Bikramjit is entitled to $208 in unpaid minimum wages ($16 per week x 13 weeks) and $3,203.20 in unpaid overtime compensation ($246.40 per week x 13 weeks).

---

[13] As they did with Kulwinder, Plaintiffs confusingly state that Bikramjit's hourly wages were above the applicable state minimum wage in effect at all relevant times and that "he is not entitled to any minimum [sic] damages."  Proposed Findings ¶ 77; see Footnote 11, supra. Again, this is erroneous and, as explained herein, the Court concludes that Bikramjit's hourly wages were, in fact, below the applicable state minimum wage rates in effect at all relevant times.

### ii.  December 31, 2018 to December 30, 2019

Bikramjit avers that from December 31, 2018 to December 30, 2019, he worked 84 hours per week and was paid a flat rate of $10.50 per hour, or $882 per week.  Bikramjit Aff. ¶¶ 6, 8; Compl. ¶ 50.  The New York State minimum wage in effect during this period was $11.10 per hour.  See N.Y. Lab. Law § 652(1)(c).  Had Defendants paid Bikramjit $11.10 per hour during this period, Bikramjit would have earned minimum wages of $444 ($11.10 per hour x 40 hours), as opposed to the $420 that he was paid ($10.50 per hour x 40 hours).  Accordingly, Bikramjit is entitled to $24 in unpaid minimum wages for each week worked during this period ($444 - $420).

With respect to overtime compensation, had Defendants paid Bikramjit 1.5 times the New York State minimum wage rate for each of his overtime hours worked during this period, he would have received overtime compensation of $732.60 ($16.65 per hour x 44 hours), as opposed to the $462 that was paid ($10.50 per hour x 44 hours).  Bikramjit is therefore entitled to $270.60 in unpaid overtime compensation for each week worked during this period ($732.60 - $462).

Bikramjit worked 52.14 weeks during this period.  Therefore, for this period, Bikramjit is entitled to $1,251.36 in unpaid minimum wages ($24 per week x 52.14 weeks) and $14,109.08 in unpaid overtime compensation ($270.60 per week x 52.14 weeks).

### iii.  December 31, 2019 to March 9, 2020

Bikramjit avers that from December 31, 2019 to March 9, 2020, he worked 84 hours per week and was paid a flat rate of $11.20 per hour, or $940.80 per week.  Bikramjit Aff. ¶¶ 6, 9; Compl. ¶ 51.  The New York State minimum wage in effect during this period was $11.80 per hour.  See N.Y. Lab. Law § 652(1)(c).  Had Defendants paid Bikramjit $11.80 per hour during

this period, Bikramjit would have earned minimum wages of $472 per week ($11.80 per hour x 40 hours), as opposed to the $448 that he was paid ($11.20 per hour x 40 hours). Accordingly, Bikramjit is entitled to $24 in unpaid minimum wages for each week worked during this period ($472 - $448).

With respect to overtime wages, had Defendants paid Bikramjit 1.5 times the New York State minimum wage for each of his overtime hours worked during this period, he would have received overtime compensation of $778.80 per week ($17.70 per hour x 44 hours), as opposed to the $492.80 that he was paid ($11.20 per hour x 44 hours). Bikramjit is therefore entitled to $286 in unpaid overtime compensation for each week worked during this period ($778.80 - $492.80).

Bikramjit worked 10 weeks during this period. Therefore, for this period, Bikramjit is entitled to $240 in unpaid minimum wages ($24 per week x 10 weeks) and $2,860 in unpaid overtime compensation ($286 per week x 10 weeks).

* * * * * * * * * *

Based on the foregoing, I respectfully recommend that Kulwinder be awarded a total of $4,448.40 in unpaid minimum wages for his entire period of employment with Meadow Hill ($697.20 + $1,459.92 + $834.24 + $1,251.36 + $205.68 + $6.00), and Bikramjit be awarded a total of $1,699.36 in unpaid minimum wages for his entire period of employment with Meadow Hill ($208 + $1,251.36 + $240). I further respectfully recommend that Kulwinder be awarded $49,809.19 in unpaid overtime compensation for his entire period of employment with Meadow Hill ($7,669.20 + $12,732.59 + $12,847.30 + $14,109.08 + $2,451.02), and Bikramjit be awarded $20,172.28 in unpaid overtime compensation for his entire period of employment with Meadow Hill ($3,203.20 + $14,109.08 + $2,860).

### 2. Unpaid Spread-of-Hours Premiums

Plaintiffs seek recovery for violation of the "spread of hours" provision of the NYLL.

<u>See</u> N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4.  For each day in which the spread of hours

between the beginning and end of the workday exceeds ten hours, an employee is entitled to

receive one additional hour of pay at the basic minimum hourly rate.  <u>Id.</u>

### a. Kulwinder Singh

Throughout his employment with Defendants—from May 1, 2016 to March 2, 2020—

Kulwinder worked 12 hours per day, seven days per week, Kulwinder Aff. ¶¶ 4, 6; Compl. ¶¶ 28,

30, with the exception of March 1-2, 2020, <u>see</u> Section 2.C.1.a.v, <u>supra</u>.  Accordingly, he is

entitled to spread-of-hours premiums for nearly every day that he worked.  From May 1, 2016 to

December 30, 2016, the New York State minimum wage was $9.00 per hour.  <u>See</u> N.Y. Lab.

Law § 652(1).  Defendants therefore owe Kulwinder $63 for each week worked during this

period ($9.00 per day x 7 days worked in excess of 10 hours).  As Kulwinder worked 34.86

weeks during this period, he is entitled to $2,196.18 in unpaid spread-of-hours premiums for this

period ($63 per week x 34.86 weeks).

From December 31, 2016 to December 30, 2017, the New York State minimum wage

was $9.70 per hour.  <u>See</u> N.Y. Lab. Law § 652(1)(c).  Defendants therefore owe Kulwinder

$67.90 for each week worked during this period ($9.70 per day x 7 days worked in excess of 10

hours).  As Kulwinder worked 52.14 weeks during this period, he is entitled to $3,540.31 in

unpaid spread-of-hours premiums for this period ($67.90 per week x 52.14).

From December 31, 2017 to December 30, 2018, the New York State minimum wage

was $10.40 per hour.  <u>See</u> N.Y. Lab. Law § 652(1)(c).  Defendants therefore owe Kulwinder

$72.80 for each week worked during this period ($10.40 per day x 7 days worked in excess of 10

hours).  As Kulwinder worked 52.14 weeks during this period, he is entitled to $3,795.79 in unpaid spread-of-hours premiums for this period ($72.80 per week x 52.14).

From December 31, 2018 to December 30, 2019, the New York State minimum wage was $11.10 per hour.  See N.Y. Lab. Law § 652(1)(c).  Defendants therefore owe Kulwinder $77.70 for each week worked during this period ($11.10 per day x 7 days worked in excess of 10 hours).  As Kulwinder worked 52.14 weeks during this period, he is entitled to $4,051.28 in unpaid spread-of-hours premiums for this period ($77.70 per week x 52.14).

From December 31, 2019 to February 28, 2020, the New York State minimum wage was $11.80 per hour.  See N.Y. Lab. Law § 652(1)(c).  Defendants therefore owe Kulwinder $82.60 for each week worked during this period ($11.80 per day x 7 days worked in excess of 10 hours). As Kulwinder worked 8.57 weeks during this period, he is entitled to $707.88 in unpaid spread-of-hours premiums for this period ($82.60 per week x 8.57).

From March 1- 2, 2020, Kulwinder worked a total of ten hours, and his employment was then terminated.  Kulwinder Aff. ¶ 7.  He neither seeks, see Proposed Findings ¶ 99, nor is he entitled to, any spread-of-hours premiums for those two days.

### b.  Bikramjit Singh

Throughout his employment with Defendants—from October 1, 2018 to March 9, 2020—Bikramjit worked 12 hours per day, seven days per week.  Bikramjit Aff. ¶¶ 4, 6; Compl. ¶¶ 44-45.  From October 1, 2018 to December 30, 2018, the New York State minimum wage was $10.40 per hour.  See N.Y. Lab. Law § 652(1)(c).  Defendants therefore owe Bikramjit $72.80 for each week worked during this period ($10.40 per day x 7 days worked in excess of 10 hours). As Bikramjit worked 13 weeks during this period, he is entitled to $946.40 in unpaid spread-of-hours premiums for this period ($72.80 per week x 13).

From December 31, 2018 to December 30, 2019, the New York State minimum wage was $11.10 per hour.  See N.Y. Lab. Law § 652(1)(c).  Defendants therefore owe Bikramjit $77.70 for each week worked during this period ($11.10 per day x 7 days worked in excess of 10 hours).  As Bikramjit worked 52.14 weeks during this period, he is entitled to $4,051.28 in unpaid spread-of-hours premiums for this period ($77.70 per week x 52.14).

From December 31, 2019 to March 9, 2020, the New York State minimum wage was $11.80 per hour.  See N.Y. Lab. Law § 652(1)(c).  Defendants therefore owe Bikramjit $82.60 for each week worked during this period ($11.80 per day x 7 days worked in excess of 10 hours).  As Bikramjit worked 10 weeks during this period, he is entitled to $826 in unpaid spread-of-hours premiums for this period ($82.60 per week x 10).

* * * * * * * * * *

Based on the foregoing, I respectfully recommend that Kulwinder be awarded $14,291.44 in total unpaid spread-of-hours premiums ($2,196.18 + $3,540.31 + $3,795.79 + $4,051.28 + $707.88) and that Bikramjit be awarded $5,823.68 in total unpaid spread-of-hours premiums ($946.40 + $4,051.28 + $826).

### 3.  Damages for Statutory Notice and Wage Statement Violations

As noted above, the NYLL requires employers to provide a notice at the time an employee is hired, in both English and the employee's primary language, that sets forth certain information.  See Section II.A.2, supra; N.Y. Lab. Law § 195(1)(a).  The NYLL specifies that if an employee is not provided with such notice within ten business days of his or her first day of employment, then the employee may recover damages of $50.00 for each workday that the violations occurred, up to a maximum total of $5,000.00.  N.Y. Lab. Law § 198(1-b).

In addition, the NYLL requires employers to provide employees with wage statements on each payday.  See Section II.A.2, supra; N.Y. Lab. Law § 195(3).  If the employer fails to provide such statements, then the employee may recover damages of $250.00 for each workday that the violations occurred, up to a maximum total of $5,000.00.  N.Y. Lab. Law § 198(1-d).

Kulwinder avers that at the start of his employment on May 1, 2016, he did not receive a notice in English and Hindi (his primary language) reflecting the true rates of pay and payday.  See Kulwinder Aff. ¶ 17; Compl. ¶¶ 25, 41.  In addition, Kulwinder maintains that throughout his employment, he did not receive a paystub that listed his name, the employer's name, the employer's address and telephone number, his rate or rates of pay, any deductions made from his wages, any allowances claimed as part of the minimum wage, and his gross and net wages for each payday.  Id.  Kulwinder further states that he never received any information about minimum wage or overtime under New York State or federal laws.  Kulwinder Aff. ¶ 18.  Accordingly, Defendants violated both the notice and wage statement requirements of the NYLL with respect to Kulwinder, and Kulwinder is entitled to $5,000 for the violation of NYLL § 195(1)(a) and $5,000 for the violation of NYLL § 195(3).

Similarly, Bikramjit avers that at the start of his employment on October 1, 2018, he did not receive a notice in English and Hindi (his primary language) reflecting the true rates of pay and payday.  See Bikramjit Aff. ¶ 14; Compl. ¶¶ 25, 54.  In addition, Bikramjit maintains that throughout his employment, he did not receive a paystub that listed his name, the employer's name, the employer's address and telephone number, his rate or rates of pay, any deductions made from his wages, any allowances claimed as part of the minimum wage, and his gross and net wages for each payday.  Id.  Bikramjit further states that he never received any information about minimum wage or overtime under New York State or federal laws.  Bikramjit Aff. ¶ 15.

Accordingly, Defendants violated both the notice and wage statement requirements of the NYLL with respect to Bikramjit, and Bikramjit is entitled to $5,000 for the violation of NYLL § 195(1)(a) and $5,000 for the violation of NYLL § 195(3).

Based on the foregoing, I respectfully recommend that Kulwinder and Bikramjit each be awarded $10,000 as damages for these statutory violations.

### 4.  Liquidated Damages

Plaintiffs seek liquidated damages based on Defendants' violations of the NYLL.  See Proposed Findings ¶¶ 105-110.  "In any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover . . . unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."  N.Y. Lab. Law § 198(1-a); see also N.Y. Lab. Law § 663.  "Defendants that fail to respond to a motion for default judgment necessarily fail to carry the burden of demonstrating good faith."  Herrera Lopez v. Metrowireless 167 Inc., No. 18-cv-10754 (JPO), 2020 WL 289785, at *3 (S.D.N.Y. Jan. 21, 2020).

In light of Defendants' default, Kulwinder and Bikramjit have established Defendants' liability for their failure to pay all of the minimum wages, overtime compensation, and spread-of-hours premiums to which Plaintiffs are entitled under the NYLL.  Plaintiffs are therefore entitled to liquidated damages equal to 100 percent of these unpaid amounts.  Moreover, because the applicable statute of limitations for NYLL claims is six years, Plaintiffs are each entitled to liquidated damages for wages due for the entire period of their employment.

Accordingly, I respectfully recommend that Kulwinder be awarded liquidated damages in the total amount of $68,549.03 ($4,448.40 in unpaid minimum wages + $49,809.19 in unpaid overtime compensation + $14,291.44 in unpaid spread-of-hours premiums), and Bikramjit be awarded liquidated damages in the total amount of $27,695.32 ($1,699.36 in unpaid minimum wages + $20,172.28 in unpaid overtime compensation + $5,823.68 in unpaid spread-of-hours premiums).

### 5.  Prejudgment Interest

Plaintiffs seek prejudgment interest of 9 percent per annum pursuant to the NYLL. Compl. ¶ 4.  "Under the NYLL, . . . prejudgment interest may be awarded pursuant to the New York Civil Practice Laws and Rules ('N.Y.C.P.L.R.') in addition to liquidated damages." Begum v. Ariba Disc., Inc., No. 12-cv-6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (citing Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999)).  Under the NYLL, prejudgment interest is "applied against compensatory damages only."  Castellanos, 2014 WL 2624759, at *5.  "Prejudgment interest is not available for violations of the wage statement or wage notice provisions."  Salustio v. 106 Columbia Deli Corp., 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017).

Prejudgment interest is recoverable under New York law at the rate of 9 percent per annum either from "the earliest ascertainable date the cause of action existed" or, "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y.C.P.L.R. §§ 5001(b), 5004.  In this case, damages "were incurred at various times," as Defendants failed to pay Plaintiffs their minimum wages, overtime compensation, and spread-of-hours premiums over the course of a number of years.  Courts have used the midpoint of a

plaintiff's period of employment as the intermediate date from which to calculate prejudgment interest in cases such as this.  See, e.g., Herrera Lopez, 2020 WL 289785, at \*4 ("Courts often choose the midpoint of the plaintiff's employment within the limitations period.") (quotation marks and alteration omitted); Guallpa, 2014 WL 2200393, at \*7.  Here, the midpoint of Kulwinder's employment was April 1, 2018.  The midpoint of Bikramjit's employment was June 20, 2019.

Accordingly, I respectfully recommend that Kulwinder be granted prejudgment interest on his total award of unpaid minimum wages, overtime compensation, and spread-of-hours premiums (a total of $68,549.03) from April 1, 2018  until the date of entry of judgment, at the rate of 9 percent per annum.  In addition, I respectfully recommend that Bikramjit be granted prejudgment interest on his total award of unpaid minimum wages, overtime compensation, and spread-of-hours premiums (a total of $27,695.32) from June 20, 2019 until the date of entry of judgment, at the rate of 9 percent per annum.

### 6. Post-judgment Interest

In addition to prejudgment interest, Plaintiffs seek post-judgment interest.  Compl. ¶¶ 3, 4 & Prayer for Relief.  Under federal law, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."   28 U.S.C. § 1961(a).  The Second Circuit has held that an award of post-judgment interest is "mandatory" and should be awarded at the statutory rate prescribed by section 1961.  Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008) (citing Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 100 (2d Cir. 2004)).  Post-judgment interest is commonly awarded in FLSA/NYLL cases such as this.  See, e.g., Fermin, 93 F. Supp. 3d at 53; Begum, 2015 WL 223780, at \*3.

Accordingly, I respectfully recommend that Plaintiffs be awarded post-judgment interest calculated in accordance with 28 U.S.C. § 1961.

### D.  Attorneys' Fees and Costs

Plaintiffs request an award of attorneys' fees and costs in the amount of $39,314.23.  See Troy Attorneys' Fees Decl. ¶ 44.  For the reasons set forth below, I respectfully recommend a lesser award of fees and costs.

#### 1.  Attorneys' Fees

Both the FLSA and the NYLL allow a prevailing plaintiff to recover reasonable attorneys' fees.  Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020); see 29 U.S.C. § 216(b); N.Y. Lab. Law § 663.  In light of Defendants' default, Plaintiffs are prevailing parties here, and accordingly Plaintiffs are entitled to pursue reasonable attorneys' fees and costs.  See, e.g., Harris v. Best Companion Homecare Servs., Inc., No. 18-cv-5328 (RRM) (AKT), 2019 WL 4738821, at *7 (E.D.N.Y. Aug. 26, 2019) (in case involving claims under the FLSA and NYLL, where the judge "granted Plaintiff's motion for default judgment, Plaintiff [was] the prevailing party entitled to an award of attorneys' fees and costs"), adopted by 2019 WL 4737056 (E.D.N.Y. Sept. 27, 2019).  To evaluate the reasonableness of attorneys' fees, courts must "(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the reasonable hourly rate by the number of hours reasonably expended to determine the presumptively reasonable fee; and (4) make an appropriate adjustment to arrive at the final fee award."  Creighton v. Dominican Coll., No. 09-cv-3983 (TSZ), 2011 WL 4914724, at *6 (S.D.N.Y. Aug. 16, 2011).

"The district court retains discretion to determine . . . what constitutes a reasonable fee."  Millea v. Metro North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quotation marks omitted).  A

reasonable fee is calculated by taking "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case— creates a 'presumptively reasonable fee.'" Millea, 658 F.3d at 166 (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008) and Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1673 (2010)). "A detailed explanation of the lodestar calculation is unnecessary, but compliance with the Supreme Court's directive that fee award calculations be 'objective and reviewable,' implies the district court should at least provide the number of hours and the hourly rate used to produce the lodestar figure." Id. at 166-67 (citing Perdue, 130 S. Ct. at 1674). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437.

　　　In this case, Plaintiffs seek to recover fees for work performed by managing attorney John Troy, managing associate Aaron Schweitzer, managing clerk Preethi Kilaru, and Certified Public Accountant ("CPA") Maggie Huang. See Troy Attorneys' Fees Decl.

### a. Reasonableness of Hourly Rates

　　　In determining if a requested hourly rate is reasonable, a court must analyze whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984). Thus, "the court uses the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Weather v. City of Mount Vernon, No. 08-cv-192 (RPP), 2011 WL 2119689, at *2. (S.D.N.Y. May 27, 2011)

(quotation marks omitted).  "Courts should rely on both evidence submitted by the parties as to the rates they typically charge, and [the court's] own knowledge of comparable rates charged by lawyers in the district."  Id. (quotation marks and citation omitted).  Moreover, "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment[.]"  LeBlanc-Sternberg, 143 F.3d at 764 (citing Missouri v. Jenkins, 491 U.S. 274, 283-84 (1989)).  In calculating the presumptively reasonable fee, courts should bear in mind that "[t]he reasonable hourly rate is the rate a paying client would be willing to pay," and that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.

Managing attorney John Troy received an LL.M. in 1985 and was admitted to the New York Bar in 1989.  Troy Attorneys' Fees Decl. ¶ 18.  He is currently the attorney of record in over 165 wage-and-hour matters pending in the Southern District of New York.  Id. ¶ 22.  Troy seeks an hourly rate of $550.  Id. ¶ 29.

Managing associate Aaron Schweitzer received his J.D. in 2016, was admitted to the New Jersey Bar in November 2017, and was admitted to the New York Bar in May 2018.  Troy Attorneys' Fees Decl. ¶ 30.  Schweitzer has litigated over 99 wage-and-hour actions in federal court.  Id.  Schweitzer seeks an hourly rate of $350.  Id. ¶¶ 36-37.

Managing clerk Preethi Kilaru received her LL.M. in 2017 and has worked at Troy Law since 2018.  Troy Attorneys' Fees Decl. ¶ 39.  Kilaru seeks an hourly rate of $200.  Id. ¶ 41.

"Courts in this District have recently determined that a reasonable rate for senior attorneys handling wage-and-hour cases, in this market, typically ranges from $300 to $400 per hour."  Wan v. YWL USA Inc., No. 18-cv-10334 (CS), 2021 WL 1905036, at *5 (S.D.N.Y. May 12, 2021) (quotation marks and alteration omitted) (quoting Lin v. La Vie En Schezuan Rest.

Corp., No. 15-cv-9507 (DF), 2020 WL 1819941, at *3 (S.D.N.Y. Apr. 9, 2020)).  The Wan court

added that "[a]s for associates, rates in excess of $225.00 per hour are reserved for FLSA

litigators with more than three years' experience, while associates with one to three years of

experience have been awarded rates ranging from $150 to $200 per hour."  Id. (quotation marks

omitted).  Furthermore, "[t]he standard paralegal rate in this district is $75 per hour, unless it has

been shown that the paralegal has specialized skills."  Id. (quotation marks omitted).

 Wan—a decision issued just three months ago—involved a fee application made by Troy

Law and sought compensation for work performed by Troy, Schweitzer, and Kilaru.  In that

case, the court explained that "[w]hile the higher rates requested by Plaintiff's counsel have been

awarded to them before, those rates were unopposed and awarded in the context of a default

judgment.  By contrast, courts that have thoroughly scrutinized Troy Law's requests for fees

have awarded lower rates."  Id. at *6 (citations omitted).  Based on the quality of counsel's work,

the court found that Plaintiff's requested hourly rates were "unreasonable."  Id. ("This was a

straightforward case, yet Plaintiff's counsel consistently failed to demonstrate the level of skill

required to perform even simple legal services properly.").  The court concluded that the

appropriate hourly rates were $325 for Troy, $175 for Schweitzer, and $75 for Kilaru.  Id.

 Although this case involves a default by Defendants, which did not provide as much

opportunity for the Court to evaluate counsel's work, the work product generated here was not of

the highest quality.  Critically for purposes of the inquest, Plaintiffs' Proposed Findings were

confusing and sometimes inaccurate, and the Court ultimately could not rely on Plaintiffs'

damages worksheet because of the number of errors it contained.  Accordingly, consistent with

Your Honor's analysis in Wan, I respectfully recommend that the appropriate hourly rates for

this matter are $325 for Troy, $175 for Schweitzer, and $75 for Kilaru.

Plaintiffs seek an hourly rate of $150 for CPA Maggie Huang, yet they do not provide any information about Huang's experience or professional qualifications. Rather, they simply state that Huang was previously awarded a rate of $150 per hour in Hu v. 226 Wild Ginger, Inc., No. 17-cv-10161 (JGK) (KNF), 2020 WL 6324090 (S.D.N.Y. Oct. 7, 2020),[14] and Tarsem Singh et al. v. Dany Restoration, Inc. et al., No. 17-cv-3787 (JMF), ECF No. 79 (S.D.N.Y. Sept. 18, 2018).[15] See Attorneys' Fees Memo at 6. Although Plaintiffs seek an hourly rate of $150 for Huang, the Court concludes that this hourly rate is not reasonable. Other courts have declined to award Huang's requested hourly rate of $150. See La Vie En Schezuan, 2020 WL 1819941, at *6 (declining Huang's request of $150 per hour in fees and awarding $100 per hour); see also Lin v. Ginza 685 Inc., No. 18-cv-12202 (AJN), 2021 WL 2138511, at *2 (S.D.N.Y. May 26, 2021) (finding Troy Law's hourly billing rates excessive and that a reasonable hourly rate for Huang was $100). Accordingly, I respectfully recommend an hourly rate of $100 for Huang.

### b. Reasonableness of Hours Expended

In determining the number of hours reasonably expended, a court must consider both the "contemporaneous time records … [that] specify, for each attorney, the date, hours expended, and nature of the work done," New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), as well as "its own familiarity with the case and its experience with the case and its experience generally as well as … the evidentiary submissions and arguments of

---

[14] The court in Hu noted that Huang "received her Master of Information System degree from the University of East Michigan in 1986 and Bachelor of Business degree in Public Finance in Taiwan and is a certified public accountant licensed in New York." 2020 WL 6324090, at *8.

[15] Bingyu Huang, the woman identified as an office assistant at Troy Law in the Tarsem Singh case, see ECF No. 77 at 15, 17 Civ. 3787 (JMF) (S.D.N.Y. Aug. 24, 2018), does not appear to be the same person as Maggie Huang, who is identified as a CPA in this case, see Attorneys' Fees Memo at 5; Troy Attorneys' Fees Decl. ¶ 42.

the parties," Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (quotation marks omitted).

Moreover, in determining the number of hours that were reasonably expended on the litigation,

the court has discretion to "trim fat," or reduce the total number of hours claimed to have been

spent. Soler v. G & U, Inc., 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992). Where a plaintiff

submits deficient or incomplete billing records demonstrating the number of hours expended,

courts may reduce the fee award requested. See Hensley, 461 U.S. at 437 n.12 (an attorney

seeking a fee award must, at least, "identify the general subject matter of his [or her] time

expenditures"). The court may also exclude "excessive, redundant or otherwise unnecessary

hours" from the calculation, Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999), or

may make an across-the-board reduction in the number of hours for which the fees will be

awarded, see Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997). "The relevant issue . . .

is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the

work was performed, a reasonable attorney would have engaged in similar time expenditures."

Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).

Here, Plaintiffs seek fees for a total of 74.14 hours. Specifically, Plaintiffs' time records

reflect that Troy performed 45.18 hours of work; Schweitzer performed 10.94 hours of work;

Huang performed 3.90 hours of work; and Kilaru performed 14.12 hours of work. Troy

Attorneys' Fees Decl. ¶ 42. As the most experienced attorney with the highest billable rate, John

Troy should not have been the one to perform the majority of the work in this matter. "In this

relatively straightforward FLSA–NYLL case, staffing the case in such a manner warrants an

across-the-board adjustment in the number of hours billed." Agudelo v. E&D LLC, No. 12-cv-

960 (HB), 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013); see also Jin v. Shanghai Original,

Inc., No. 16-cv-5633 (ARR) (JO), 2020 WL 4783399, at *8 (E.D.N.Y. Aug. 18, 2020) ("John

Troy frequently billed for tasks that should have been handled by a less-experienced lawyer or support staff").[16]  Additionally, the billing invoice provided by Plaintiffs' counsel shows "overbilling for routine tasks," Jin, 2020 WL 4783399, at *8, and "[e]xamples of grossly excessive billing," Wan, 2021 WL 1905036, at *7, such as Troy spending 0.5 hours to file Kulwinder's consent to become a party; 0.5 hours to file Bikramjit's consent to become a party; 0.5 hours to file a request for issuance of a summons; 0.9 hours to "[f]inalize the Complaint with BCL630, 624, Preservation Hold, Attorney Lien, Retaliation Notices"; 1.0 hour to file the Complaint, Summons, and Civil Cover Sheet; 2.0 hours to draft a certificate of default judgment against the "Corporate Defendants [sic]"; and 2.75 hours to draft a proposed judgment.  Troy Attorneys' Fees Decl. Ex. 1.  In addition, some of the time billed by Troy at his attorney billable rate was for clerical or administrative tasks.  For example, Troy billed 0.33 hours to "Key In Complaint Service Due Date and Expected Date of Return of Service"; 0.25 hours to "Scan, Review for Accuracy and ECF Proof of Service, Defs"[17]; and 0.3 hours to "Compile Exhibits[,]

---

[16] In the Jin case, which also involved an attorneys' fee application by Troy Law, the court cited the firm's "[p]oor billing practices," many of which were employed in this case as well.  For example, in Jin, among the tasks performed by Troy that should have been performed by either a more junior lawyer or a non-lawyer, were "0.4 hours for 'Research: ABC Board on Liquor Licenses[ ],'" 2.25 hours for 'Defendant Website Research: Yelp/Grubhub/MenuPages/Delivery.com/FB/web,' and 4.5 hours for 'Research: Search Corp & Biz Entity Database.'"  2020 WL 4783399, at *8.  Similarly, in this case, Troy billed 0.5 hours for "Research: Property in Defendants ABUJABER HAZIM, and AHMED GHADEER Name via Libor Acris PropertyShark"; 0.4 hours for "Research: ABC Board on Liquor Licenses[]"; 0.5 hours for "Case Location Entry: Site Visit Preparation, Miles from Office"; 0.4 hours for "Research: DMV/Vehicle Plate Number HRA 5046"; 1.3 hours for "Research: Lexis Nexis/Legal/Others"; 0.4 hours for "Research: DMV/Vehicle Plate Number HRA 3176"; 0.5 hours for "Case Timeline: Statute of Limitations, Plaintiff(s), and Corporate Defendant(s)"; 2.25 hours for "Defendant Website Research: FB/web"; 0.4 hours for "Research: Property at Addresses Known via Libor Acris PropertyShark"; and 0.5 hours for "Research: Search Corp & Biz Entity Database."  Troy Attorneys' Fees Decl. Ex. 1.

[17] On that same day, Kilaru, the managing clerk, also billed 0.2 hours to "Review for Accuracy and Scan Proof of Service, Def."  Troy Attorneys' Fees Decl. Ex. 1.

Pleadings, POS, Clerk's Default, Invoice, Damages." <u>Id.</u> "Such tasks should not have been billed at all or, at most, should have been billed at a paralegal rate." <u>Wan</u>, 2021 WL 1905036, at *7.

Accordingly, to account for the failure to delegate tasks to a more junior attorney, the billing of attorney hours for clerical and/or paralegal tasks, and excessive time spent on certain tasks, the Court will employ an across-the-board reduction in the number of hours billed by John Troy of 40 percent. <u>See id.</u> at *7 (finding that 5 percent of total hours billed by three attorneys should be billed at paralegal rate and finding that 40 percent of total number of hours billed by three attorneys and an office manager "should be trimmed as excessive or otherwise unnecessary"); <u>Jin</u>, 2020 WL 4783399, at *8 (making a 40 percent across-the-board reduction in the number of compensable hours based on poor billing practices and the court's "experience with the Troy Law Firm over the course of this case").

Lastly, there is one time entry that appears to be erroneous and is therefore excluded from the Court's calculation. On August 25, 2020, Aaron Schweitzer billed 3.0 hours to "Draft Amended Affidavit in Support of Pltfs' Revised FF and CL." Troy Attorneys' Fees Decl. Ex. 1. However, the Court did not issue its "Order for Proposed Findings of Fact and Conclusions of Law on Damages," seeking Plaintiffs' submission of same, until December 9, 2020. <u>See</u> ECF No. 34. Thus, this task could not have been performed in connection with this case on August 25, 2020, and because the Court cannot assume that it is attributable to this case, the Court excludes these three hours from Schweitzer's total number of compensable hours.

I therefore respectfully recommend that Plaintiffs should be awarded attorneys' fees totaling $11,649.25 based on the following calculations:

- Troy: $325 per hour x. 27.11 hours (reflecting the recommended 40 percent reduction of the 45.18 hours billed by Troy), for a total of $8,810.75;

- Schweitzer: $175 per hour x. 7.94 hours (reflecting the 10.94 hours billed by Schweitzer minus the recommended 3.0 hour deduction for the erroneous August 25, 2020 entry), for a total of $1,389.50;

- Huang: $100 per hour x. 3.9 hours, for a total of $390; and

- Kilaru: $75 per hour x 14.12 hours, for a total of $1,059.00.

### 2. Costs

The FLSA and the NYLL allow for the recovery of costs in addition to attorneys' fees. See U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).  Costs included in an attorneys' fee award are "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg, 143 F.3d at 763 (quotation marks omitted).  The costs incurred in this case, which are enumerated in the billing invoice, total $854.00.  Troy Attorneys' Fees Decl. ¶ 43 & Ex. 1.  Specifically, $20 was spent on DMV Owner Search Fees; $400 was spent on filing fees; $10 was spent to print and mail the Summons and Complaint; $375 was spent in service fees; and $49 was spent to print and mail the default motion papers.  See Troy Attorneys' Fees Decl. Ex. 1.  The costs incurred in this case are reasonable and are the types of costs that have been allowed in FLSA/NYLL cases.  See Apolinario v. Luis Angie Deli Grocery Inc., No. 14-cv-2328 (GHW), 2015 WL 4522984, at *4 (S.D.N.Y. July 27, 2015) (collecting cases).

Therefore, I respectfully recommend that Plaintiffs be awarded $854 in costs.

## CONCLUSION

For the reasons stated above, I respectfully recommend that a default judgment be entered against Defendants as follows: (1) $147,098.06 to Kulwinder Singh ($4,448.40 in unpaid

minimum wages, $49,809.19 in unpaid overtime compensation, $14,291.44 in unpaid spread of hour premiums, $68,549.03 in liquidated damages, and $10,000 for statutory violations); and (2) $65,390.64 to Bikramjit Singh ($1,699.36 in unpaid minimum wages, $20,172.28 in unpaid overtime compensation, $5,823.68 in unpaid spread of hour premiums, $27,695.32 in liquidated damages, and $10,000 for statutory violations).  In addition, I respectfully recommend that Plaintiffs be awarded prejudgment interest at the rate of 9 percent per annum as follows: (1) for Kulwinder Singh, from April 1, 2018 until the date of entry of judgment on his compensatory damages award of $68,549.03 (unpaid minimum wages + unpaid overtime compensation + unpaid spread of hours premiums); and (2) for Bikramjit Singh, from June 20, 2019 until the date of entry of judgment on his compensatory damages award of $27,695.32 (unpaid minimum wages + unpaid overtime compensation + unpaid spread of hours premiums).  I further respectfully recommend that Plaintiffs be awarded post-judgment interest on all damages amounts, to be calculated in accordance with 28 U.S.C. § 1961.  Lastly, I respectfully recommend an award of $11,649.25 in attorneys' fees and $854 in costs.

Although not included in the Proposed Findings, the Complaint requests an automatic increase in the judgment in accordance with NYLL § 198(4), which states that "[a]ny judgment or court order awarding remedies under this section <u>shall</u> provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent" (emphasis added); <u>Romero v. New Blue Flowers Gourmet Corp.</u>, No. 16-cv-08753 (DF), 2021 WL 860986, at *4 (S.D.N.Y. Mar. 8, 2021) ("Both the statutory language and case law reflect that this provision is included when a court issues a judgment based upon a NYLL cause of action.") (quotation marks

omitted).  Given that I am respectfully recommending an award of damages based on Plaintiffs' claims under the NYLL and given the mandatory nature of this provision, I also respectfully recommend that language be included in the judgment to be entered in this case to provide for the automatic increase provision of NYLL § 198(4).

Plaintiffs must serve Defendants with a copy of this Report and Recommendation, including copies of any unpublished decisions cited herein, at their last known addresses, and must file appropriate proof of service on or before August 16, 2021.

### NOTICE

Pursuant to 28 U.S.C. § 636(b)(l) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made by mail).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any responses to such objections, shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Cathy Seibel, United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the Honorable Andrew E. Krause at the same address.

Any request for an extension of time for filing objections or responses to objections must be directed to Judge Seibel, and not to the undersigned.

**Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and will preclude appellate review.**  See Thomas v. Arn, 474 U.S. 140 (1985); Smith v. Campbell, 782 F.3d 93, 102 (2d Cir. 2015).

Dated: August 9, 2021
       White Plains, New York

                Respectfully submitted,

                _____

                Andrew E. Krause
                United States Magistrate Judge
                Southern District of New York

No objections to this Report and Recommendation (the "R&R") have been filed, so I review it for clear error. Having found no error, clear or otherwise, I hereby adopt the R&R as the decision of the Court.  The Clerk of Court is respectfully directed to enter judgment as follows: (1) $147,098.06 in favor of Plaintiff Kulwinder Singh; and (2) $65,390.64 in favor of Plaintiff Bikramjit Singh; (3) prejudgment interest at the rate of 9% per annum from 4/1/18 until the date of entry of judgment on Kulwinder Singh's compensatory damages award of $68,549.03; (4) prejudgment interest at the rate of 9% per annum for 6/20/19 until the date of entry of judgment on Bikramjit Singh's compensatory damages award of $27,695.32; (5) post-judgment interest on all damages amounts to be calculated in accordance with 28 USC 1961; and (6) $11,649.25 in attorney' fees and $854 in costs.  Further, pursuant to NYLL 198(4), any amounts unpaid upon the expiration of 90 days after entry of judgment, or 90 days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by 15%.  Upon entry of judgment, the Clerk shall close the case.

                SO ORDERED.

                _____   8/29/21
                CATHY SEIBEL, U.S.D.J.