UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
KULWINDER SINGH, and BIKRAMJIT SINGH,
*on behalf of themselves and others similarly*
*situated*,

                                Plaintiffs,

      - against -

MEADOW HILL MOBILE INC d/b/a Meadow Hill
Mobil Mart, HAZIM ABUJABER, and AHMAD
GHADEER,

                               Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 20-CV-3853 (CS)

<u>Appearances</u>:
Aaron B. Schweitzer
John Troy
Tiffany Troy
Troy Law, PLLC
Flushing, New York
*Counsel for Plaintiffs*

Kevin D. Bloom
Bloom & Bloom, P.C.
New Windsor, New York

Alex Smith
Middletown, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

      Before the Court is Defendants' Motion to Vacate the Amended Judgment entered on

December 7, 2021.  (ECF No. 67.)

## I.      **BACKGROUND**

      Plaintiffs initiated this lawsuit on May 19, 2020, bringing wage and hour claims under the

New York Labor Law and the Fair Labor Standards Act, individually and as class

representatives, against Defendant Meadow Hill Mobile Inc. d/b/a Meadow Hill Mobil Mart

("Meadow Hill"), Hazim Abujaber, and Ahmad Ghadeer.  (ECF No. 1 ("Compl.").)[1]

On December 4, 2020, after Defendants failed to respond to the Complaint or to an Order

to Show Cause why a default judgment should not be entered, the Court entered judgment on

liability and referred the case to Magistrate Judge Andrew Krause for purposes of a damages

inquest.  (*See* Minute Entry dated Dec. 4, 2020.)  On August 9, 2021, Judge Krause issued a

report and recommendation ("R&R") that recommended that judgment be entered against

Defendants as follows:

(1) $147,098.06 to Kulwinder Singh for compensatory, liquidated, and statutory

damages;

(2) $65,390.64 to Bikramjit Singh for compensatory, liquidated, and statutory damages;

(3) Prejudgment interest at the rate of 9 percent per annum from April 9, 2018 until the

date of entry of judgment for Kulwinder Singh, and from June 20, 2019 until the date

of entry of judgment for Bikramjit Singh;

(4) Post-judgment interest calculated in accordance with 28 U.S.C. § 1961;

(5) $11,649.25 in attorneys' fees; and

(6) $854 in costs.

(ECF No. 43 at 3.)  A copy of the R&R was sent to Defendants.  (ECF No. 44.)  No objections

were received, and the Court adopted the R&R on August 29, 2021.  (ECF No. 45.)  Judgment

was entered the following day.  (ECF No. 46 (the "Judgment").)

---

[1] The Complaint incorrectly names Defendant Hazim Abujaber as "Abujaber Hazim" and
Defendant Ahmad Ghadeer as "Ahmed Ghadeer."  I will refer to them as Defendant Abujaber
and Defendant Ghadeer.  Defendants note in their brief that Defendant Ghadeer's name is
actually "Ahmad H. Alghadeer Alkhalailh," (ECF No. 68 ("Ds' Mem.") at 5 n.3), but because
they refer to him as Ghadeer, I will do the same.

On October 14, 2021, Plaintiffs asked to file a motion pursuant to Rule 60(a) of the Federal Rules of Civil Procedure ("FRCP") to correct typographical errors including the misnaming of Defendant Hazim Abujaber as "Abujaber Hazim" and the misnaming of Defendant Ahmad Ghadeer as "Ahmed Ghadeer." (ECF No. 47.) The motion was filed on November 3, 2021, (ECF Nos. 49-51), and after Defendants were served but did not oppose, (ECF Nos. 53-56), granted by entry of an Amended Judgment, (ECF No. 57 (the "Amended Judgment")), on December 7, 2021.

Over eight months later, on August 17, 2022, counsel for Defendants filed a notice of appearance, (ECF No. 59), and a letter seeking a pre-motion conference in anticipation of filing a motion to vacate the Amended Judgment pursuant to FRCP 60(b)(1), 60(b)(3), 60(b)(4), and 60(b)(6), (ECF No. 60). At the conference on September 20, 2022, the Court set a briefing schedule, (*see* Minute Entry dated Sept. 20, 2022), and the instant motion followed, (ECF Nos. 67-72).

## II.   <u>LEGAL STANDARD</u>

FRCP 55(c) permits litigants to petition the court to "set aside an entry of default for good cause, and . . . set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c); *see Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). "[T]he factors examined in deciding whether to set aside a default or a default judgment are the same," but "courts apply the factors more rigorously in the case of a default judgment because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Enron Oil Corp.*, 10 F.3d at 96.

"Federal Rule of Civil Procedure 60(b) governs motions for relief from a final judgment . . . and provides six independent grounds for relief." *Burda Media, Inc. v. Viertel*, 417 F.3d 292,

298 (2d Cir. 2005).[2]  Under Rule 60(b), a district court may vacate a judgment for any of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied [or] released . . . or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Because entry of a default judgment is "the most severe sanction which the court may apply," "all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits."  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *see Crawford v. Nails on 7th by Jenny Inc.*, No. 18-CV-9849, 2020 WL 564059, at *2 (S.D.N.Y. Feb. 5, 2020) ("[W]hen doubt exists as to whether a default should be vacated, the doubt should be resolved in favor of the defaulting party, so as to ensure that actions will be resolved on the merits.").  On the other hand, default procedures "provide a useful remedy when a litigant is confronted by an obstructionist adversary" and "those procedural rules play a constructive role in maintaining the orderly and efficient administration of justice."  *Enron Oil Corp*, 10 F.3d at 96.

The Second Circuit has established a three-factor test that guides district courts' broad discretion in deciding motions to vacate default judgments outside the context of Rule 60(b)(4), *see Glob. Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 387 (S.D.N.Y. 2013), *aff'd in part*, *modified in part*, 612 F. App'x 11 (2d Cir. 2015) (summary order):  "(1) whether the default was willful; (2) whether setting aside the default would prejudice the party for whom

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

default was awarded; and (3) whether the moving party has presented a meritorious defense,"
*Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012) (summary order).

III.   **DISCUSSON**

Defendants move to vacate the default judgment pursuant to Rules 60(b)(1), 60(b)(3),
60(b)(4), and 60(b)(6).

The Court will address Rule 60(b)(4) before turning to the other grounds.  *See, e.g.*,
*Weingeist v. Tropix Media & Ent.*, No. 20-CV-275, 2022 WL 970589, at *4 (S.D.N.Y. Mar. 30,
2022); *Vega v. Trinity Realty Corp.*, No. 14-CV-7417, 2021 WL 738693, at *6-7 (S.D.N.Y. Feb.
24, 2021).

A.   **Rule 60(b)(4)**

Defendants move pursuant to Rule 60(b)(4) to vacate the Amended Judgment on the
ground that it is void because service of process was defective as to each Defendant.  (Ds' Mem.
at 2-5.)

Rule 60(b)(4) authorizes a court to relieve a party from a final judgment if "the judgment
is void," Fed. R. Civ. P. 60(b)(4), meaning it is "so affected by a fundamental infirmity that the
infirmity may be raised even after the judgment becomes final," *United Student Aid Funds, Inc.
v. Espinosa*, 559 U.S. 260, 270 (2010).  The rule "strikes a balance between the need for finality
of judgments and the importance of ensuring that litigants have a full and fair opportunity to
litigate a dispute." *Id.* at 276.  Rule 60(b)(4) applies only "in the rare instance where a judgment
is premised either on a certain type of jurisdictional error or on a violation of due process that
deprives a party of notice or the opportunity to be heard." *Id.* at 271.  As the Second Circuit has
explained, under Rule 60(b)(4), a judgment is void "only if the court that rendered it lacked

jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 193 (2d Cir. 2006).

"A default judgment obtained by way of defective service is void *ab initio* and must be set aside as a matter of law." *Voice Tele Servs., Inc. v. Zee Telecoms Ltd.*, 338 F.R.D. 200, 202 (S.D.N.Y. 2021). "This is because a Court must have personal jurisdiction over a defendant to enter a default judgment, and personal jurisdiction requires proper service of process." *William Gottlieb Mgmt. Co v. Carlin*, No. 20-CV-8907, 2022 WL 17822578, at *2 (S.D.N.Y. Dec. 20, 2022), *appeal dismissed*, No. 23-74 (2d Cir. Mar. 9, 2023). Unlike the other provisions of Rule 60(b), courts have "no judicial discretion when considering a jurisdictional question such as the sufficiency of process." *Am. Inst. of Certified Pub. Accts. v. Affinity Card, Inc.*, 8 F. Supp. 2d 372, 375-76 (S.D.N.Y. 1998); *see Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) (summary order); *accord Burda Media*, 417 F.3d at 298.

Typically, "the burden of proof in Rule 60(b)(4) motions is properly placed on the party asserting that the judgment is not void." *Weingeist*, 2022 WL 970589, at *4. But "on a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur." *Burda Media*, 417 F.3d at 299. "[T]he burden of proof only shifts where the defendant was on notice of the original proceeding *before* the entry of default judgment." *Khaldei v. Kaspiev*, No. 10-CV-8328, 2014 WL 2575774, at *5 (S.D.N.Y. June 9, 2014) (emphasis in original). Further, "[a] process server's sworn statement of service creates a presumption that service has been effectuated." *De Curtis v. Ferrandina*, 529 F. App'x 85, 85-86 (2d Cir. 2013) (summary order). "A defendant's affidavit denying service rebuts the presumption of proper service established by

the process server's affidavit and necessitates an evidentiary hearing, only where the defendant swears to specific facts to rebut the statements in the process server's affidavits." *Id.*  To do so, a defendant must go beyond a "general denial of service." *Cablevision Sys. N.Y.C. Corp. v. Okolo*, 197 F. App'x 61, 62 (2d Cir. 2006) (summary order).

Here, numerous filings were mailed to each of the Defendants prior to the entry of the Judgment, including copies of the documents docketed at ECF numbers 21-28, (ECF No. 30), copies of the documents docketed at ECF numbers 34 and 37-41, (ECF No. 42), and Judge Krause's report and recommendation on damages, (ECF No. 44).[3]  "Under the governing law, there is a rebuttable presumption that where the record shows that a properly addressed piece of mail was placed in the care of the Postal Service, that piece of mail is presumed to have been delivered." *Windward Bora LLC v. Baez*, No. 19-CV-1755, 2021 WL 7908011, at *3 (E.D.N.Y. Feb. 24, 2021).  Defendants do not dispute that they received the mailed documents or that they had actual notice of the original proceeding, but instead contend that whether or not they received the mailings is irrelevant to the question of whether they were properly served.  But actual notice is relevant to the burden of proof on a Rule 60(b)(4) motion and, as will be discussed below, to the willfulness of Defendants' default.  Because Defendants have made no effort to rebut the presumption that they received the numerous mailings described above and do not claim to have lacked actual notice of the proceeding before judgment was entered, it is undisputed that they had such notice, and thus they bear the burden of proof to establish that the purported service did not occur.  *See William Gottlieb Mgmt.*, 2022 WL 17822578, at *2

---

[3] In addition, copies of the documents docketed as ECF numbers 49-52 were sent to Defendants before the entry of the Amended Judgment.  (ECF Nos. 54-56.)

("[Defendant] does not deny having actual notice of the proceedings, and thus bears the burden of proving he was not properly served.").

### 1.      Service Upon the Individual Defendants

FRCP 4(e) governs service of process on an individual.  Rule 4(e) provides that proper service may be effected by:  (1) delivering a copy of the summons and complaint to the individual personally; (2) leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of the summons and complaint to an authorized agent of the individual. *See* Fed. R. Civ. P. 4(e)(2)(A)-(C).  Alternatively, Rule 4 permits service to be made by "following state law for serving a summons in an action . . . in the state where the district court is located or where service is made."  *Id.* 4(e)(1).

Under New York law, the following methods may generally be used to serve process on an individual:  (1) delivering the summons to the person personally; (2) delivering the summons to a person of suitable age and discretion at the person's "actual place of business, dwelling place or usual place of abode" and mailing the summons to the person's last known residence or "actual place of business"; (3) delivering the summons to an individual designated as the person's agent for service; or (4) where service as set forth in items (1) and (2) above cannot be made with due diligence, affixing the summons to the door of the actual place of business, dwelling or usual place of abode of the person to be served and mailing the summons to the last known residence or actual place of business.  *See* N.Y. C.P.L.R. 308(1)-(4).

### a.      Service of Defendant Abujaber

Defendants argue that Defendant Abujaber was not properly served under FRCP 4(e)(2)(A) or N.Y. C.P.L.R. 308(1) because the process server handed him the Summons and

Complaint in a blank envelope and did not inform him of its contents.  (Ds' Mem. at 3.)  The

process server averred in her affidavit that she personally delivered a copy of the Summons and

Complaint to Defendant Abujaber on July 10, 2020 at his place of business, and that she knew it

was him because he identified himself by name.  (ECF No. 10 at 1.)  The affidavit attaches a

picture of Abujaber at work holding and looking down at a large envelope with red trim and

some sort of blue or black writing on it.  (ECF No. 10-1.)  Plaintiffs represent that it contained

the Summons and Complaint but do not contend that there was any writing on the envelope that

would have identified its contents.  Defendants do not dispute that it is Abujaber in the photo or

that he received the envelope from the process server, but argue instead that he was not properly

served because he was not informed and did not understand that the envelope contained the

Summons and Complaint.  (Ds' Mem. at 3.)

> According to Abujaber's affidavit, the process server and another woman entered the gas
station where he worked and asked if he was "Hazim."  (ECF No. 70 ¶ 29.)  When he confirmed
that he was, the process server handed him a blank envelope.  (*Id.*)  Abujaber asked her what the
envelope was and she told him to "just open it."  (*Id.* ¶ 31.)  Abujaber then asked who the
envelope was from and the process server responded, "My boss."  (*Id.*)  According to Abujaber,
he did not open the blank envelope and later threw it in the trash because he "thought [he] was
being setup for something," in that, "given I thought I was being filmed, I thought by opening the
envelope someone would accuse me of accepting something I was not supposed to have."  (*Id.* ¶
32.)

> Defendants cite *Bertha G. v Paul T.*, 509 N.Y.S.2d 995 (Fam. Ct. 1986), and *Jackson v.
Schuylkill Silk Mills*, 156 N.Y.S. 219 (App. Div. 1915), to support the proposition that "[h]ad the
Summons and Complaint been unenclosed when handed to Mr. Abujaber, or had Mr. Abujaber

been informed that the envelope contained a Summons, service would have been proper." (Ds' Mem. at 3.) In *Bertha G.*, the process server handed the respondent a plain envelope addressed to him but the respondent rejected service, handing the envelope back to her without looking inside at its contents. 509 N.Y.S.2d at 996. The court found the service improper because "while there is no general rule which requires that a process server announce that he is making service when he does so, it is required that, if the respondent evades or rejects the service, the process server cannot leave in silence but must announce his action." *Id.* at 997. In the instant case, however, Abujaber did not reject or evade the service, which Defendants acknowledge, (Ds' Mem. at 4), so the failure to announce does not render the service defective.

In *Jackson*, the process server delivered the summons to the defendant's employee enclosed in an envelope. 156 N.Y.S. at 221. The court found that although the delivery was "contrary to the proper and regular method of service," it did not "invalidate the service, because immediately upon its receipt [the employee] examined the envelope and found therein copies of the summons and complaint." *Id.* at 222. While this language might suggest that service in an envelope is not proper, that there is no case explicitly saying so since *Jackson* was decided in 1915 leads me to believe that what *Jackson* meant by "proper and regular" was "customary," not "required." In any event, as the court in *Bertha G.* noted, the "implication" of *Jackson* "is that service in an envelope is not proper *and that it would not have been upheld if [the employee] had rejected it without looking inside*." *Bertha G.*, 509 N.Y.S.2d at 996 (emphasis added). The implication of that interpretation is that service will be upheld, even in a plain envelope, if the recipient does not reject it, as was the case here.

In *In re Bonesteel's Will*, 228 N.Y.S.2d 301, 304 (App. Div. 1962), the court held that

The bare delivery of the process without explanation is enough; but when such a delivery is either so physically masked as to be misleading or the process server

> by some act or statement suggests that the process is being left for someone else, the service may well be so equivocal as to be incomplete.

The court then summarized *Jackson* as "a case where a summons was delivered enclosed in an envelope" but service was found sufficient because the recipient immediately examined the contents, *id.*, perhaps suggesting that enclosure in an envelope "so physically mask[s the service] as to be misleading." I respectfully disagree. The envelope may mask the contents, but there is nothing misleading about that. If the outside of the envelope suggested that it contained something other than a summons, that might well be misleading. Here, although the envelope may have been mysterious, it was not misleading, so the "bare delivery without explanation" should be sufficient. That said, the court in *Bonesteel* emphasized that

> [t]he object of all service of process is to give notice to the party on whom service is made, that he may be aware of and may resist what is sought of him. The party served must in some substantial form be apprised of the fact that service is intended to be made.

*Id.* But I do not think Plaintiffs here necessarily fell afoul of this principle. Abujaber would have been so apprised had he simply opened the envelope, which is hardly a burdensome requirement. I am not convinced, based on a smattering of ancient cases, that handing over the Summons and Complaint in an unmarked envelope was insufficient to apprise Abujaber that he was being sued. On the other hand, the process server was arguably cryptic, refusing to tell Abujaber who the envelope was from or what it contained, and Plaintiffs do not cite any cases to support their argument that personal service through delivery of a blank envelope without announcement of service is sufficient. Accordingly, whether Abujaber was properly served under New York state law is not free from doubt.

But I need not ultimately decide the issue, because assuming that Defendants have met their burden of establishing that service was improper under FRCP 4(e)(1) and N.Y. C.P.L.R. 308(1), they have not provided any case law or other support for their argument that the service

violated FRCP 4(e)(2)(A), which provides an independent basis for service.  *See Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 385 n.5 (S.D.N.Y. 1986) ("Since federal question jurisdiction lies in this action, service could have been made pursuant to the federal rules.")  That provision authorizes service by delivery of the summons and complaint to the individual personally, which indisputably happened here.  In their brief, Defendants cite two federal cases – *Board of Education of Liverpool Central School District v. Sobol*, No. 90-CV-198, 1991 WL 22320 (N.D.N.Y. Feb. 19, 1991), and *Ingenito v. Riri USA, Inc.*, No. 11-CV-2569, 2011 WL 4056078 (E.D.N.Y. Aug. 9, 2011), *report and recommendation adopted*, 2011 WL 4056116 (E.D.N.Y. Sept. 12, 2011), (*see* Ds' Mem. at 3 n.2), – which in turn cite *Bertha G.*, but both cases reviewed service of process prior to removal, which is governed by state law, and neither case dictates that service is improper here even under state law.  The Court has located no federal case saying service in an envelope is invalid, but instead found one that assumed such service to be effective.  *See Slep-Tone Ent. Corp. v. Morgan*, No. 10-CV-207, 2011 WL 2416104, at *2 (N.D. Fla. June 13, 2011) (finding service proper under FRCP 4(e)(2)(A) where defendant was personally handed envelope containing complaint).

Because Defendants bear the burden of proof on this motion and have failed to establish that proper service of Defendant Abujaber under federal law did not occur, Defendants' motion pursuant to Rule 60(b)(4) is denied as to Defendant Abujaber.

b.    Service of Defendant Ghadeer

Defendants next argue that Defendant Ghadeer was not properly served because Abujaber was not properly served, and even if he was, he was not an agent authorized by law to accept service on Ghadeer's behalf.  (Ds' Mem. at 5.)

First, as discussed above, Defendants did not meet their burden of showing that Abujaber was not personally served.  Second, Abujaber did not need to be an agent authorized by law to accept service for Ghadeer.  Under N.Y. C.P.L.R. § 308(2), personal service may be made

> by delivering the summons within the state to a person of suitable age and discretion at the usual place of business, dwelling place or usual abode of the person to be served and . . . by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served.

The process server averred in her affidavit that she personally left a copy of the Summons and Complaint with Abujaber, a person of suitable age and discretion, at 1423 Route 300, Newburgh, New York 12550, and that she mailed a copy to Ghadeer at the same address "in an envelope marked 'Personal and Confidential' and not indicating on the outside thereof by return address or otherwise that the same was from an attorney or concerned an action against said Defendant, with said mailing occurring on or within 20 days of the date of service."  (ECF No. 11 at 1.)  Defendants do not dispute that these things occurred or that the Route 300 address is Ghadeer's usual place of business,[4] but argue only that Abujaber was not an agent authorized by law to accept service on Ghadeer's behalf under FRCP 4(e)(2)(C).  (Ds' Mem. at 5.)  But reliance on Rule 4(e)(2) is not necessary where a plaintiff serves a defendant through a method of service for which state law provides, as permitted by FRCP 4(e)(1).

Accordingly, Defendants' motion pursuant to Rule 60(b)(4) is denied as to Defendant Ghadeer.

---

[4] The affidavit of service erroneously describes the Route 300 address as Ghadeer's "actual dwelling place/usual place of abode," (ECF No. 11 at 1), but Defendants do not dispute that it is his usual place of business.

###### 2. Service Upon the Corporate Defendant

Defendants argue that Meadow Hill was not properly served because its service is predicated on Defendant Abujaber's improper service, and even if Abujaber had been properly served, he was not an agent authorized by law to accept service on the corporation's behalf.  (Ds' Mem. at 5.)  As discussed above, Defendants failed to meet their burden of establishing that Abujaber was not served through personal delivery.  But Defendants' alternative argument requires further analysis.

Under FRCP 4, a corporation may be served

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1)(B).  Service upon a corporation may also be effected in any manner authorized by state law for service.  *Id*. 4(e), (h).  New York law provides that service upon a corporation may be made by delivering the pleadings to "an officer, director, managing or general agent, or cashier, or assistant cashier, or to any other agent authorized by appointment or by law to receive service."  N.Y. C.P.L.R. § 311(a)(1).[5]  "New York's statutory provision for personal service on a corporate representative is based on, and should be construed consistently with, Federal Rule of Civil Procedure 4."  *Llolla v. Karen Gardens Apartment Corp.*, No. 12-CV-1356, 2015 WL 13731354, at *5 (E.D.N.Y. July 2, 2015), *report and recommendation adopted*, 2016 WL 233665 (E.D.N.Y. Jan. 20, 2016); *see Avanti Enters., Inc. v. A&T Produce,*

---

[5] The term "cashier" refers to a financial official of company, not a person stationed at a cash register to receive payment from customers.  *See Yongwei Zhang v. How Ho Cheng*, No. 10-CV-8560, 2011 WL 6376728, at *3 (S.D.N.Y. Dec. 19, 2011); *Weiss v. Glatt Pack Kosher, Inc.*, 526 N.Y.S.2d 174, 174 (App. Div. 1988).

*Inc.*, No. 09-CV-1185, 2010 WL 3924771, at *1 (E.D.N.Y. July 21, 2010) ("The laws in New York . . . are substantively the same as the federal rule for the purposes [of effectuating service on a corporation]."), *report and recommendation adopted*, 2010 WL 3909243 (E.D.N.Y. Sept. 30, 2010).

Plaintiffs argue that service was proper because Abujaber "was not merely an employee, but was an 'officer[], director[], manager[] and/or majority shareholder' of Meadow Hill Mobile Inc.," as demonstrated by his status as one of only two shareholders of the corporation, his ability to hire and fire Plaintiffs, his role in signing Plaintiffs' paychecks, and his position as liquor license principal of Meadow Hill's successor in interest. (ECF No. 71 ("Ps' Opp.") at 4 (alteration in original) (quoting Compl. ¶ 12).) Defendants dispute this claim, attaching an affidavit from Abujaber in which he avers that he was never "an officer, director, shareholder, or an agent appointed by [Meadow Hill] to accept service of process," but rather was just an employee at the business wholly owned by Ghadeer. (ECF No. 70 ¶ 5.)[6]

The persons who may properly be served under FRCP 4(h)(1)(B) and N.Y. C.P.L.R. § 311(a)(1) are all high-level corporate employees. *See Llolla*, 2015 WL 13731354, at *5; *see also Chen v. Best Miyako Sushi Corp.*, No. 16-CV-2012, 2021 WL 707273, at *9 (S.D.N.Y. Feb. 1, 2021) ("Service on a corporation requires delivery to a high-level employee of a corporate defendant – someone who operates at its highest levels, or at least has overall authority to make high-level decisions on the part of the enterprise."), *report and recommendation adopted sub nom. Shiqiu Chen v. Best Miyako Sushi Corp.*, 2021 WL 706412 (S.D.N.Y. Feb. 19, 2021). Given Defendants' conclusory statement that Abujaber was never "an officer, director,

---

[6] Abujaber goes on to explain that after June 10, 2019, the mini-mart in question was operated by MH Mobil 300 Inc., of which he was sole shareholder until Ghadeer became a joint shareholder in October or November 2019. (ECF No. 70 ¶¶ 6-7.)

shareholder, or an agent appointed by [Meadow Hill] to accept service of process," and their failure to address Plaintiffs' arguments to the contrary, it is difficult to say whether Abujaber would qualify as a high-level employee under the relevant provisions.

Further, it is difficult to assess the reasonableness of the process server's identification of Abujaber as an individual authorized to accept service on behalf of Meadow Hill. "In tendering service, the process server may rely upon the corporation's employees to identify the individuals authorized to accept service," provided such reliance is "reasonable." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002); *see Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 272 (1980). "A process server's reliance has been found unreasonable when he made no attempt to ascertain the title or corporate position of the individual who accepted the papers or even to inquire whether the individual was actually an employee of the defendant corporation." *Shengjian Zhuang v. Hui's Garden Rest. Inc.*, No. 17-CV-7547, 2019 WL 1578193, at *1 (E.D.N.Y. Feb. 19, 2019).

Here, Plaintiffs do not allege that the process server made any attempt to ascertain the title or corporate position of Abujaber before serving him on behalf of Meadow Hill. Instead, the process server avers that she personally served Abujaber, an "officer/agent of Meadow Hill Mobile, Inc. . . . , a person designated by law to accept service on behalf of above-named Corporate Defendant," (ECF No. 9), without providing the basis for her conclusion that he was authorized to accept service. "This facial infirmity suggests service was not made to a person authorized to accept service." *Shengjian Zhuang*, 2019 WL 1578193, at *2; *see, e.g.*, *Valle v. GDT Enters., Inc.*, No. 19-CV-797, 2020 WL 435295, at *4 (E.D.N.Y. Jan. 28, 2020) (process server's reliance unreasonable where affidavit of service stated only "Stephanie McVangh – Managing Agent, Auth. to Accept, who is designated by law to accept service of process on

behalf of [the defendant]"); *Baity v. Kralik*, 51 F. Supp. 3d 414, 430 (S.D.N.Y. 2014) (process server's reliance unreasonable where the affidavit of service only identified the individual who accepted service and stated that such individual "is designated by law to accept service on behalf of [the defendant]").

On the record available to the Court, and in light of the disagreement among the parties, it is not clear what role Defendant Abujaber played at Meadow Hill. Accordingly, an evidentiary hearing is required. *See Old Republic Ins.*, 301 F.3d at 57 ("A defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing."); *Wardak v. Cavanaugh*, No. 21-MC-47, 2022 WL 16854349, at *5 (N.D.N.Y. Nov. 10, 2022) (requiring an evidentiary hearing where "Respondent has asserted specific facts controverting Plaintiff's affidavit of service and mailing").

Accordingly, I defer ruling on the Rule 60(b)(4) motion as it relates to Meadow Hill, until after a hearing can be held.

## B.   Alternative Arguments for Vacatur

In the alternative, Defendants argue that the Amended Judgment should be vacated pursuant to Rules 60(b)(1), 60(b)(3), and 60(b)(6).

### 1.   Timeliness of Motions

Motions under subsections (1) (due to mistake, inadvertence, surprise, or excusable neglect), (2) (due to newly-discovered evidence), or (3) (due to fraud, misrepresentation, or misconduct by an opposing party) of Rule 60(b) must be filed no more than a year after the entry of the judgment or order or the date of the proceeding.

*Wang v. Int'l Bus. Machs. Corp.*, 839 F. App'x 643, 646 (2d Cir. 2021) (summary order). "The one-year limitation period for Rule 60(b)[(1)-(3)] motions is absolute." *Martha Graham Sch. &*

17

*Dance Found., Inc. v. Martha Graham Ctr. of Contemp. Dance, Inc.*, 466 F.3d 97, 100 (2d Cir. 2006).

Defendants argue that their motion, dated November 21, 2022, is timely under Rules 60(b)(1) and 60(b)(3) because it was made within one year of the Amended Judgment, which was filed on December 7, 2021.  (Ds' Mem. at 6 n.4.)  But courts calculate the one-year limitation period using the date of the original default judgment where the amended judgment simply corrected a typographical error and did not alter the court's finding of liability.  *See Quintana v. Young Blooming, Inc.*, No. 12-CV-120, 2016 WL 1273231, at *3-4 (E.D.N.Y. Mar. 30, 2016) (calculating one-year limitation period from original judgment date because "the Corrected Default Judgment did not alter the original Default Judgment in any respect"); *GLeS, Inc. v. MK Real Est. Dev. & Trade Co.*, 530 F. App'x 153, 153-54 (3rd Cir. 2013) (*per curiam*) (calculating one-year limitation period from the original judgment date rather than amended judgment date because defendants were challenging finding of liability that was final as of entry of initial judgment); *Jones v. Swanson*, 512 F.3d 1045, 1049 (8th Cir. 2008) (calculating one-year limitation period from entry of initial judgment, not amended judgment that "left in place the jury's finding of tort liability and only altered the award of damages").

Here, the Amended Judgment was issued to correct a typographical error and did not alter the parties' legal positions whatsoever.  Accordingly, the date upon which the one-year limitation period began to run is August 30, 2021 – the date of the Judgment – and thus Defendants' motions under Rules 60(b)(1) and 60(b)(3) are untimely.[7]

---

[7] Defendants appeared and requested a pre-motion conference on August 17, 2021, (ECF Nos. 59-60), within the one-year period.  While my Individual Practices ordinarily require a pre-motion conference, they also provide that "[a] party need not comply with the pre-motion conference requirement where it reasonably believes that delay in filing might result in the loss

Defendants' motion under Rule 60(b)(6), under which "the court may relieve a party . . . from a final judgment, order, or proceeding for . . . any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6), is also untimely.  Rule 60(b)(6) is a "catch-all provision," which "allows courts to vacate judgments whenever necessary to accomplish justice." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009).  While this provision of the Rule is a "grand reservoir of equitable power to do justice in a particular case[,] . . . . that reservoir is not bottomless." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012).  A party seeking relief under Rule 60(b)(6) must "demonstrate that extraordinary circumstances warrant relief." *Id*.  Moreover, while "[a] motion under Rule 60(b)(6) is not subject to a specific time limit, [it] still must be brought within a reasonable time." *Canouse v. Protext Mobility, Inc.*, No. 22-CV-1335, 2023 WL 3490915, at *2 (2d Cir. May 17, 2023).  "With respect to timing, the Supreme Court has found that to 'justify relief under subsection (6) of Rule 60(b), a party must show extraordinary circumstances suggesting that the *party is faultless in the delay*.'" *Sec. & Exch. Comm'n v. Penn*, No. 14-CV-581, 2021 WL 1226978, at *5 (S.D.N.Y. Mar. 31, 2021) (emphasis in original) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993)), *aff'd sub nom. U.S. Sec. & Exch. Comm'n v. Penn*, No. 21-1348-CV, 2022 WL 2517218 (2d Cir. July 7, 2022) (summary order).  "If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable." *Pioneer Inv. Servs. Co.*, 507 U.S. at 393.

Here Defendants are far from faultless in the delay.  As discussed above, they had actual notice of the pending litigation from numerous mailings while it was ongoing, yet they waited

---

of a right."  Rule 2(A), Individual Practices of Judge Cathy Seibel.  Defendants thus could have timely filed their motion without first seeking a pre-motion conference.

almost a year from the date of the Judgment to appear.  (*See* ECF No. 59.)  Defendants have made no effort to explain their delay except to argue that they were not properly served and that their actual notice of the underlying litigation is of no moment.  Even if that justified their disregard of the ongoing litigation, which it does not, it surely has nothing to do with their waiting almost a year to act after the Judgment was entered, and does not amount to excusable neglect or extraordinary circumstances.

Defendants also assert that the Court should vacate the default judgment under Rule 60(b)(6) because Plaintiffs have filed a second case against Meadow Hill's successor-in-interest to recover damages already obtained in this action.  (Ds' Mem. at 10.)  But Defendants have already requested leave to file a motion for summary judgment in that action to argue against Plaintiffs' double recovery, and so any risk of inequity can be resolved in that matter.  *See* Letter, *Singh v. MH Mobil 300, Inc. ("Singh II")*, No. 21-CV-8499 (S.D.N.Y. May 2, 2023), ECF No. 34; *see also In re Langley*, No. 11-ADV-80007, 2012 WL 3555484, at *3 (Bankr. W.D. Mich. Aug. 14, 2012) (finding issue of double recovery "immaterial to the factors the court must consider under Rule 60(b)" and noting that "Plaintiff may address any double recovery issues in post-judgment collection proceedings").  Accordingly, Defendants have failed to present extraordinary circumstances warranting relief under Rule 60(b)(6) in this case.

### 2. Discretionary Factors

Even if Defendants' motion were timely under Rules 60(b)(1), 60(b)(3), and 60(b)(6), I would still find that the discretionary factors – applied in deciding motions to vacate a default judgment outside the context of Rule 60(b)(4) – counsel against vacatur.  First, Defendants default was willful.  *See Nana v. Le Viking LLC*, No. 17-CV-928, 2020 WL 3182769, at *3 (S.D.N.Y. June 15, 2020) ("[W]here it is shown that a defendant is aware of the action pending

against him, that defendant is deemed to have acted willfully if he fails to file responsive pleading") (citing *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186–187 (2d Cir. 2015)); *see also Jaramillo v. Vega*, 675 F. App'x 76, 77 (2d Cir. 2017) (summary order) (affirming finding of defendant's conduct as willful where he "did not dispute that he had received and ignored numerous documents from the court"). Here, as stated above, Defendants repeatedly ignored mailings and do not deny actual notice of the proceeding.

Second, to the extent Defendants have presented any meritorious defenses – which is possible, at least in part, as Defendants argue that Bikramjit Singh was never employed by Meadow Hill, (ECF No. 69 ¶ 17) – courts have found "a default judgment should not be vacated if the default was willful . . . . [d]espite any meritoriousness of an anticipated defense." *Hernandez v. La Cazuela de Mari Rest., Inc.*, 538 F. Supp. 2d 528, 534 (E.D.N.Y. 2007) (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991)); *see Finkel v. Hall-Mark Elec. Supplies Corp.*, No. 07-CV-2376, 2011 WL 2847407, at *3 (E.D.N.Y. July 12, 2011) ("If a default is determined to be willful, that fact alone can justify denying a motion to vacate a default judgment").; *Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 17-CV-5001, 2020 WL 6390162, at *7 (E.D.N.Y. Nov. 2, 2020) ("[W]illfulness alone is a sufficient basis to deny vacating the default.").

Third, Plaintiffs have sufficiently established that they would be prejudiced should the default be set aside. "Some delay is inevitable when a motion to vacate a default judgment is granted; thus, delay alone is not a sufficient basis for establishing prejudice" and "[s]omething more is needed." *Green*, 420 F.3d at 110. "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for

fraud and collusion." *Puddu v. 6D Glob. Techs., Inc.*, No. 15-CV-8061, 2020 WL 2833852, at
*2 (S.D.N.Y. May 31, 2020).  Here, Plaintiffs argue that the delay in this case has permitted
Defendants the time to "rebut Plaintiffs' claims with inaccurate pay stubs" and will have led to
the loss of business records, such as video surveillance footage and point of sale records, that
could substantiate Plaintiffs' hours.  (Ps' Opp. at 7.)  And, of course, memories fade over time.
The Court is satisfied that this factor weighs (even if not heavily) in favor of denying
Defendants' motion.  *See World Magic Int'l AVV v. Eddy Int'l Ltd.*, No. 09-CV-1447, 2010 WL
4457184, at *2 (S.D.N.Y. Nov. 1, 2010) (plaintiff faced prejudice where no discovery had taken
place more than twenty months after complaint was filed and Court expressed doubt that
"defendants [would] cooperate in discovery"); *Williams v. Firequench, Inc*., No. 21-CV-4112,
2022 WL 17417039, at *8 (S.D.N.Y. Dec. 5, 2022) (plaintiff faced prejudice where no discovery
had taken place in the more than two years following events giving rise to action); *Kantor v. Air
Atl. Med., P.C.*, No. 19-CV-3597, 2023 WL 2329800, at *7 (E.D.N.Y. Mar. 2, 2023) ("There is
some general risk here of fading memories and spoliated evidence, given that Plaintiff
commenced this action back in 2019 and Defendants' failure to participate in the matter stalled
any progress for over two years.").  Moreover, to the extent Defendants argue that Plaintiffs will
not be prejudiced because it is already litigating the same issues in *Singh II*, (Ds' Mem. at 10),
this factor is not determinative and does not require vacatur of the default judgment.  *See
Belizaire v. RAV Investigative & Sec. Servs., Ltd.*, 310 F.R.D. 100, 106 (S.D.N.Y. 2015) ("If a
potentially meritorious defense and the absence of prejudice were enough to vacate a default
judgment under these circumstances, then even defendants who made a strategic decision to
default could routinely disrupt final judgments.  The interests of sound and efficient judicial
administration warn against encouraging such willful and otherwise inexcusable defaults.")

Accordingly, Defendants' motion pursuant to Rules 60(b)(1), 60(b)(3), and 60(b)(6) is denied as to all Defendants.

**C.**     **Amended of Abstract of Judgment**

Both parties agree that there were errors in the Proposed Abstract of Judgment submitted by Plaintiffs, and seek to amend the Abstract of Judgment subsequently issued by the Clerk of Court.  (Ds' Mem. at 10-11; Ps' Opp. at 8; *see* ECF No. 58.)  The evidentiary hearing and my decision on the Rule 60(b)(4) motion as to Defendant Meadow Hill may or may not result in a change to the Amended Judgment.  Either way, after that decision Plaintiffs' counsel shall confer with Defendants' counsel on the correct amounts to be set forth in a proposed Amended Abstract of Judgment and submit it to the Clerk of Court.

**IV.**     **CONCLUSION**

For the reasons stated above, Defendants' motion to vacate is DENIED as to Defendants Abujaber and Ghadeer.  It is ordered that Plaintiffs and Defendant Meadow Hill shall appear for an evidentiary hearing on July 5, 2023, at 2:15 p.m. to resolve factual disputes regarding service of process on Meadow Hill.  The parties shall exchange pre-marked copies of whatever exhibits they may use at the hearing no later than June 21, 2023.  Any evidence not exchanged by that date will be precluded at the hearing.

**SO ORDERED.**

Dated: June 14, 2023
         White Plains, New York

_____
          CATHY SEIBEL, U.S.D.J.